# 23-1185-cv(L), 23-1225-cv(XAP)

# United States Court of Appeals

*for the*

# Second Circuit

---

STEVE WILKS, RAY HORTON, BRIAN FLORES, as a Class Representative, on behalf of himself and all others similarly situated,

*Plaintiffs-Appellees-Cross-Appellants,*

– v. –

NEW YORK FOOTBALL GIANTS, INC., HOUSTON NFL HOLDINGS, L.P., DBA Houston Texans, DENVER BRONCOS,

*Defendants-Appellants,*

NATIONAL FOOTBALL LEAGUE, MIAMI DOLPHINS, LTD., ARIZONA CARDINALS FOOTBALL CLUB LLC, DBA Arizona Cardinals, TENNESSEE TITANS ENTERTAINMENT, INC., DBA Tennessee Titans,

*Defendants-Appellants-Cross-Appellees,*

JOHN DOE TEAMS 1 THROUGH 29, JOHN DOE TEAMS 1 THROUGH 26,

*Defendants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## OPPOSITION TO MOTION TO DISMISS

JOHN ELEFTERAKIS
ELEFTERAKIS, ELEFTERAKIS & PANEK
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116

DOUGLAS H. WIGDOR
MICHAEL J. WILLEMIN
DAVID E. GOTTLIEB
MARJORIE MESIDOR
WIGDOR LLP
85 Fifth Avenue, 5th Floor
New York, New York 10003
(212) 257-6800

*Attorneys for Plaintiffs-Appellees-Cross Appellants*

CP COUNSEL PRESS    (800) 4-APPEAL • (326960)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

PROCEDURAL HISTORY ...............................................................2

ARGUMENT ...................................................................................7

I.      Standard for Pendent Appellate Jurisdiction ...................................7

II.     The Lead Appeal and Cross Appeal are "Inextricably Intertwined" ..............9

       A.     The Lead Appeal and Cross Appeal Will Involve Overlapping Issues, Documents and Case Law .......................................10

       B.     Second Circuit Case Law and Persuasive Authority from Other Circuits Fully Supports Application of Pendent Jurisdiction Here ......................................................15

III.    Plaintiffs Are Not Seeking Pendent Party Jurisdiction ................................22

CONCLUSION ..............................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Baez v. Hennessy,
    853 F.2d 73 (2d Cir. 1988)................................................................19

Bolmer v. Oliveira,
    594 F.3d 134 (2d Cir. 2010).............................................................22

Cole v. Burns Intern. Sec. Services,
    105 F.3d 1465 (D.C. Cir. 1997) .......................................................13

Dube v. State University of New York,
    900 F.2d 587 (2d Cir. 1990)....................................................... 19, 23

Finley v. U.S.,
    490 U.S. 545 (1989).........................................................................22

Floss v. Ryan's Fam. Steak Houses, Inc.,
    211 F.3d 306 (6th Cir. 2000)...........................................................13

Freeman v. Complex Computing Co., Inc.,
    119 F.3d 1044 (2d Cir. 1997)....................................... 9, 14, 15, 23

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991)...........................................................................12

Gruden v. NFL, et al.,
    No. A-21-844043-B (Nev. Dist. Ct. Clark Cty. Oct. 12, 2022) ................2, 13

Hill v. City of New York,
    45 F.3d 653 (2d Cir. 1995)..............................................................18

Hooters of America Inc. v. Phillips,
    173 F.3d 933 (4th Cir. 1999)..................................................... 12-13

Jones v. Parmley,
    465 F.3d 46 (2d Cir 2006)...............................................................22

Kaluczky v. City of White Plains,
    57 F.3d 202 (2d. Cir. 1995)...................................... 7, 18, 19, 23

Lamar Advertising of Penn, LLC v. Town of Orchard Park, New York,
    356 F.3d 365 (2d Cir. 2004).............................................................8

Lyons v. PNC Bank Nat'l Assoc.,
    26 F.4th 180 (4th Cir. 2022)..........................................................................16

McCowan v. Sears. Roebuck & Co.,
    908 F.2d 1099 (2d Cir. 1990)........................................................................17

McMullen v. Meijer, Inc.,
    355 F.3d 485 (6th Cir. 2004).........................................................................13

Mitchell v. Forsyth,
    472 U.S. 511 (1985)......................................................................................18

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985)......................................................................................12

Munafo v. Metropolitan Transp. Auth.,
    285 F.3d 201 (2d Cir. 2002)..........................................................................22

Myers v. Hertz Corp.,
    624 F.3d 537 (2d Cir. 2010)............................................................ 8, 9, 21, 22

Nat'l Football League Mgmt. Council v.
    Nat'l Football League Players Ass'n,
    820 F.3d 527 (2d Cir. 2016)..........................................................................12

Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.,
    330 F.3d 523 (D.C. Cir. 2003) ......................................................................17

Pokorny v. Quixtar, Inc.,
    601 F.3d 987 (9th Cir. 2010).........................................................................13

Quackenbush v. Allstate Ins. Co.,
    121 F.3d 1372 (9th Cir. 1997).......................................................................17

Rein v. Socialist People's Libyan Arab Jamahiriya, et al.,
    162 F.3d 748 (2d Cir. 1998)............................................................. 7, 8, 21, 23

Ronan Assocs., Inc. v.
    Loc. 94-94A-94B, Int'l Union of Operating Engineers, AFL-CIO,
    24 F.3d 447 (2d Cir. 1994)............................................................................11

Swint v. Chambers County Comm'n,
    514 U.S. 35 (1995).......................................................................... 7, 13, 22

United States v. City of New York,
    717 F.3d 72 (2d Cir. 2013)............................................................... 20, 21

iii

United States v. Hoskins,
    902 F. 3d 69 (2d Cir. 2018).............................................................20

Walker v. Ryan's Family Steak Houses,
    400 F.3d 370 (6th Cir. 2005)...........................................................13

Winfrey v. Simmons Foods, Inc.,
    495 F.3d 549 (8th Cir. 2007)..........................................................12

## Statutes & Other Authorities:

9 U.S.C. § 10(a)(2)............................................................................4

9 U.S.C. § 16................................................................................ 16, 17

9 U.S.C. § 16(a) ................................................................................6

9 U.S.C. § 16(a)(1)........................................................................7, 15

9 U.S.C. §§ 1-16...............................................................................9

28 U.S.C. § 1291..........................................................................7, 19

28 U.S.C. § 1292(a)......................................................................7, 17

28 U.S.C. § 1292(b).........................................................................6

29 U.S.C. § 215(b) ..........................................................................21

Fed. R. Civ. P. 23(f)......................................................................7, 21

# **INTRODUCTION**

In Defendants' lead appeal ("Lead Appeal") and Plaintiffs' cross-appeal ("Cross Appeal"), the Court will address a single overlapping and fundamental issue—whether arbitration agreements contained in the National Football League ("NFL") Constitution and Plaintiffs' related employment contracts—which designate the NFL's Commissioner to arbitrate statutory discrimination claims— are valid and/or enforceable. To answer that question in both appeals, the Court will be presented with many of the *exact same arguments*—which will cite much of the *exact same case law*—and be asked to review many of the *exact same arbitration agreements and documents*. For those reasons and others, pendent appellate jurisdiction should be exercised as to Plaintiffs' Cross Appeal.

In both opposition to the Lead Appeal and in the affirmative in the Cross Appeal, Plaintiffs will argue that the arbitration agreements at issue are invalid and unenforceable under the doctrines of unconscionability and "effective vindication" of rights—because, *inter alia*, no reasonable person could conclude that the NFL's Commissioner can provide anything resembling a fair and impartial tribunal to a plaintiff asserting discrimination against the NFL and its owners. Plaintiffs asserted these arguments before the District Court and will assert those same arguments before this Court. Respectfully, courts throughout the country have been receptive to those arguments including one that recently found the NFL's

arbitration terms to be unenforceable for the same reasons.  See e.g. Gruden v. NFL, et al., No. A-21-844043-B (Nev. Dist. Ct. Clark Cty. Oct. 12, 2022).

In arguing that there is insufficient overlap between the appeals, Defendants only consider their affirmative arguments and completely ignore the extent to which Plaintiffs' arguments in opposition to the Lead Appeal will mirror those raised by Plaintiffs in their Cross Appeal.  Defendants cannot cite a single decision which stands for the proposition that pendent appellate jurisdiction should only consider the affirmative arguments asserted by the lead appellant.  To the contrary, the Second Circuit has made clear that, while pendent jurisdiction should be carefully applied to avoid abuse, it should also be applied in a manner that is practical in carrying out judicial administration and Congressional intent.

## PROCEDURAL HISTORY

On February 1, 2022, Plaintiff Brian Flores filed a class action complaint alleging systemic race discrimination and retaliation against the NFL, Miami Dolphins, Denver Broncos, and New York Giants with respect to, *inter alia*, Head Coach hiring, retention and termination practices.  See Dist. Ct. Dkt. No 1.  On April 7, 2022, Plaintiffs Steve Wilks and Ray Horton joined in an Amended Complaint asserting additional claims against the Houston Texans (as to Mr. Flores), Arizona Cardinals (as to Mr. Wilks) and Tennessee Titans (as to Mr. Horton).  See Dist. Ct. Dkt. No. 22.

On June 21, 2022, Defendants moved to compel arbitration of all claims on the basis of an arbitration agreement in the NFL Constitution and Plaintiffs' employment agreements with their respective teams which either incorporated the NFL Constitution by reference or included a separate standalone arbitration agreement, or both.  See Dist. Ct. Dkt. Nos. 47-50.

As to Mr. Flores, Defendants argued that Mr. Flores' should be compelled to arbitrate all of his claims based on a combination of his employment agreement with the Patriots (as to claims against the Broncos, Giants, Texans and the NFL), the Dolphins (as to claims against the Broncos, Dolphins, Giants, Texans and the NFL), and the Steelers (as to be applied retroactively to all claims).  See Dist. Ct. Dkt. No. 48 at pp. 15-20.  As to Mr. Wilks and Mr. Horton, Defendants moved to compel arbitration on the basis of the NFL Constitution and their employment agreements with the Cardinals and Titans, respectively.  See Dist. Ct. Dkt. No. 48 at pp. 20-22.

In opposition, Plaintiffs asserted two primary arguments.  First, Plaintiffs argued that the purported arbitration agreement in the NFL Constitution and the related employment contracts were unconscionable because, *inter alia*, they failed to provide for an impartial forum and/or unbiased arbitrator.  See Dist. Ct. Dkt. No.

62 at pp. 6-15.[1]  Second, Plaintiffs argued that the arbitration agreements were unenforceable under the "effective vindication" doctrine.  See Dist. Ct. Dkt. No. 62 at pp. 15-17.

Both arguments relied primarily on the fact that all arbitration agreements at issue dictate that the NFL's Commissioner, currently Roger Goodell, will act as the arbitrator.  Plaintiffs argued that Mr. Goodell was inherently biased given that, *inter alia*, (i) he is the NFL's chief executive with a fiduciary obligation to act in the interests of all Defendants, (ii) he reports to the Defendants and his employment exists at their leisure, (iii) Defendants pay Mr. Goodell substantial sums of money, and (iv) Mr. Goodell's office already stated that the claims at issue are "without merit."  See Dist. Ct. Dkt. No. 62 at pp. 5-7.  As such, Plaintiffs argued that all the arbitration agreements at issue were unconscionable and prevented Plaintiffs from effectively vindicating their statutory rights.  Id. at pp. 8-19.

On March 1, 2023, the Honorable Valerie E. Caproni (the "District Court") partially granted and partially denied Defendants' motion to compel arbitration (the "Arbitration Order").  See App., 1-30; Dkt. No. 76.  The District Court compelled arbitration as to Mr. Flores' claims against the Dolphins, Mr. Wilks' claims against

---

[1]     This is a separate issue from whether an arbitration proceeding should be vacated under 9 U.S.C. 10(a)(2) *et seq*. on the basis of partiality or corruption of the arbitrator.  See e.g. Dist. Ct. Dkt. No. 62 at pp. 10-15 (citing cases).

the Cardinals and Mr. Horton's claims against the Titans, but denied Defendants'

motion to compel as to Mr. Flores' claims against the Broncos, Giants and Texans.

In short, the Arbitration Order held the following: 1- The arbitration

agreements at issue were not invalid or unenforceable under the doctrines of

unconscionability or the "effective vindication" doctrine; 2- Mr. Flores' arbitration

agreements in contract with the Dolphins did not retroactively cover his claims

against the Broncos or prospectively cover his claims against the Giants or Texans

(or related NFL claims); 3- Mr. Flores' arbitration agreement in his contract with

the Patriots and the incorporated NFL Constitution was illusory and unenforceable

as to his claims against the Broncos; 4- Mr. Flores' arbitration agreement in his

contract with the Steelers and the incorporated NFL Constitution was

unenforceable; 5- Mr. Flores' arbitration agreement in his contract with the

Dolphins covered all claims against the Dolphins (and related NFL claims); 6- Mr.

Wilks' arbitration agreement in his contract with the Cardinals covered all claims

against the Cardinals (and related NFL claims); and 7- Mr. Horton's arbitration

agreement in his contract with the Titans covered all claims against the Titans (and

related NFL claims).  Id.

On March 14 and 15, 2023, Plaintiffs and Defendants, respectively, moved

for reconsideration of the Arbitration Order.  See Dist. Ct. Dkt. Nos. 79, 81.  Many

of the same arguments were advanced in briefing the reconsideration motions as

were advanced in the underlying motion.  In particular, notwithstanding Defendants' argument that the Steelers' contract was enforceable or that the Patriots contract was not illusory, Plaintiffs argued that all the arbitration agreements in all the contracts failed and were unenforceable under the doctrines of unconscionability and/or "effective vindication" of statutory rights.  See Dist. Ct. Dkt. Nos. 80, 82, 88, 89, 93, 99.  On July 25, 2023, the District Court denied both motions ("Reconsideration Order").  See App., 31-47; Dist. Ct. Dkt. No. 102.

On August 21, 2023, the NFL, Broncos, Giants and Texans filed a notice of the Lead Appeal (No. 23-1185), the jurisdictional basis for which was 9 U.S.C. §16(a), as to aspects of the Arbitration Order and Reconsideration Order which denied their motion to compel arbitration.  See App., 48-49; Dkt. No. 113.  On September 5, 2023, Plaintiffs filed a notice of the Cross Appeal (No. 23-1225), the jurisdictional basis for which was pendent appellate jurisdiction, as to aspects of the Arbitration Order and Reconsideration Order which compelled arbitration.[2] See App., 50-51; Dist. Ct. Dkt. No. 122.

---

[2]     At the same time, Plaintiffs filed a motion for permissive interlocutory appeal under 28 U.S.C. §1292(b).  On January 4, 2024, the District Court denied that motion.  See Dist. Ct. Dkt. No. 129.

6

# ARGUMENT

## I. Standard for Pendent Appellate Jurisdiction

Generally, an appellate court only has jurisdiction over "final decisions" of a district court. See 28 U.S.C. §1291; Swint v. Chambers County Comm'n, 514 U.S. 35, 45 (1995). Interlocutory appeals are limited to certain proscribed categories. See e.g. 28 U.S.C. §1292(a) (permitting certain interlocutory appeals); 9 U.S.C. §16(a)(1) (permitting appeal from, inter alia, an order denying motion to compel arbitration); Fed. R. Civ. P. 23(f) (permitting appeal from order granting or denying class certification).

However, where an appellate court has "jurisdiction over some questions on appeal [it] may exercise its discretion to take pendent jurisdiction over independent nonappealable, but related questions." Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir. 1995). The Second Circuit has applied pendent appellate jurisdiction "(a) where an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal, or (b) where review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of a jurisdictionally sufficient one, an appellate court may exercise pendent jurisdiction." Rein v. Socialist People's Libyan Arab Jamahiriya, et al., 162 F.3d 748, 757-58 (2d Cir. 1998) (following Swint, 514 U.S. at 51 (1995)).

7

Defendants are correct that the Second Circuit has generally expressed caution with respect to the exercise of pendent jurisdiction. See Defs.' Br. at §A. However, even doctrines defined as "narrow" or "sparingly used" should still be applied where they serve their intended purpose. The Second Circuit has explained the need for restrictive use of pendent appellate jurisdiction to prevent abuse:

> [A]n overly permissive practice of deciding issues over which we lack appellate jurisdiction in interlocutory appeals is that the practice is subject to abuse; parties may bring insubstantial interlocutory appeals in order to bring before us issues we ordinarily would not be able to review until after a final decision of the district court, thus circumventing the finality rule.

Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010) (citing Rein, 162 F.3d at 757) (declining to exercise pendent jurisdiction where the same party who brought the lead appeal did so for the purpose of obtaining jurisdiction on an ancillary issue).

Finally, while the Rein Court stated that "considerations of efficiency" should not be used as the independent basis to exercise pendent appellate jurisdiction, it did not foreclose any consideration of that factor. As such, the Court has considered judicial economy in connection with certain applications of such jurisdiction. See e.g. Lamar Advertising of Penn, LLC v. Town of Orchard Park, New York, 356 F.3d 365, 372 (2d Cir. 2004) ("It is surely in the interest of judicial economy to determine now whether federal courts continue to have subject matter jurisdiction over this controversy, and we therefore find it appropriate and

8

within our discretion to review the district court's summary judgment rulings on standing and mootness.").

Similarly, the Second Circuit has described pendent appellate jurisdiction in the context of disputes covered by the Federal Arbitration Act, 9 U.S.C. §§1-16 ("FAA"), as a doctrine that "has served to conserve judicial resources and save time and work for litigants" and one that "will facilitate arbitration by defining the issues to be arbitrated as well as identifying the proper participants in the arbitration." Freeman v. Complex Computing Co., Inc., 119 F.3d 1044 (2d Cir. 1997). As stated in Freeman, the Second Circuit may exercise interlocutory pendent appellate jurisdiction over orders compelling arbitration where "[t]he goals envisioned by Congress in enacting section 16 of the FAA will [] be advanced by application of [the doctrine]." Id. at 1050.

## II.     **The Lead Appeal and Cross Appeal are "Inextricably Intertwined"**

Plaintiffs agree with the Defendants that "[f]or two rulings to be inextricably intertwined . . . the same specific question will underlie both the appealable order and the non-appealable order," such that resolution of the issue will resolve both appeals. See Defs.' Br. at p. 12 (citing Myers, 624 F.3d 553). In the matter at bar, the Lead Appeal and Cross Appeal involve the same underlying legal issue; namely, whether the arbitration agreements in the NFL Constitution and/or the related employment contracts—all of which Plaintiffs contend dictate an

9

unconsciously biased forum for the same reasons—are valid and enforceable under the law.  Accordingly pendant appellate jurisdiction is appropriate.

>A.    The Lead Appeal and Cross Appeal Will Involve Overlapping Issues, <u>Documents and Case Law</u>

The overwhelming overlap of issues between the Lead Appeal and Cross Appeal is self-evident.  Before the District Court, Defendants moved to compel arbitration of all claims based on the arbitration provisions in NFL Constitution and respective employment agreements.  In opposing those motions (and in the reconsideration motions), Plaintiffs argued that all such arbitration agreements were invalid and unenforceable for two primary reasons.  First, that all the arbitration agreements were unconscionable for failure to provide an unbiased and impartial forum.  Second, that all the arbitration agreements were unenforceable because they precluded effective vindication of statutory antidiscrimination rights.

In their motion papers before this Court, Defendants confuse and conflate the fundamental *issues* on appeal with the specific *arguments* they intend to proffer on their side.  As stated, the issue in the Lead Appeal is whether the arbitration agreement in the NFL Constitution and/or Mr. Flores' Steelers and/or Patriots contracts valid and enforceable—and Defendants advance various arguments as to why the District Court incorrectly decided those issues.  Mr. Flores' position, however, is that these agreements are invalid and unenforceable due to

10

unconscionable terms and for precluding the effective vindication of Plaintiffs'

statutory rights to be free from racial discrimination in the workplace.

Defendants claim that Plaintiffs' arguments at issue in the Cross Appeal are

not raised by the Lead Appeal because they were not relied upon by the District

Court and because Defendants will not affirmatively raise these issues themselves.

In so arguing, however, Defendants are either confusing the applicable standard for

determining whether pendent jurisdiction is appropriate, or laboring under the

misimpression that Mr. Flores' opposition to the Lead Appeal would be limited to a

defense of those bases relied upon by the District Court in issuing the challenged

decisions.  In either case, their arguments fail.

As an initial matter, it cannot be legitimately disputed that, in opposition to

the Lead Appeal, Mr. Flores can press any argument he raised before the District

Court.  Plaintiffs are not, as Defendants seem to suggest, confined to those

arguments relied upon by the District Court.  Moreover, the Second Circuit can

affirm the District Court's decision on bases that differ substantially from those

relied upon by Judge Caproni.  See e.g. Ronan Assocs., Inc. v. Loc. 94-94A-94B,

Int'l Union of Operating Engineers, AFL-CIO, 24 F.3d 447, 449 (2d Cir. 1994)

("This Court is free to affirm an appealed decision on any ground that finds

support in the record, regardless of the ground on which the trial court relied");

To be clear, when opposing the Lead Appeal, Mr. Flores will continue to argue, as he did when opposing the motion to compel arbitration, that the arbitration provisions in the NFL Constitution and/or the relevant employment contracts are unenforceable under the doctrines of unconscionability and/or "effective vindication" of statutory rights.[3]  Likewise, in the Cross Appeal, Mr. Flores, Mr. Wilks and Mr. Horton will continue to argue that the arbitration provisions are unenforceable for the same reasons.  In connection with both appeals, Plaintiffs will present the Court with many of the *exact same arguments* and much of the *exact same case law* and ask the Court to review many of the *exact same documents* at issue in the Lead Appeal, including the NFL Constitution and player contracts.

Even more specifically, in both appeals Plaintiffs will ask the Court to review an identical set of decisional authority regarding the doctrines of unconscionability and effective vindication of rights, including, *inter alia*, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985); Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527 (2d Cir. 2016); Winfrey v. Simmons Foods, Inc., 495 F.3d 549 (8th Cir. 2007); Hooters of

---

[3]     Naturally, Mr. Flores will also argue that the District Court's rationale for partially denying Defendants' motion to compel arbitration was correct.

America Inc. v. Phillips, 173 F.3d 933 (4th Cir. 1999), McMullen v. Meijer, Inc., 355 F.3d 485 (6th Cir. 2004), Pokorny v. Quixtar, Inc., 601 F.3d 987 (9th Cir. 2010), Walker v. Ryan's Family Steak Houses, 400 F.3d 370 (6th Cir. 2005); Cole v. Burns Intern. Sec. Services, 105 F.3d 1465 (D.C. Cir. 1997); Floss v. Ryan's Fam. Steak Houses, Inc., 211 F.3d 306 (6th Cir. 2000); Nostalgic Partners, LLC v. New York Yankees P'ship, No. 656724/2020; Gruden, No. A-21-844043-B.

As countless decisions make clear, the question asked by an appellate court when deciding whether to exercise pendant jurisdiction is not whether the *arguments* made by the lead appellants overlap with those made by the cross appellant.  Instead, it is whether the appeals present the same or similar *issues*.

The seminal case describing appellate jurisdiction is Swint v Chambers County Com'n, 514 U.S. 35 (1995), where the Supreme Court found its exercise to be inappropriate where the *issues* raised by the cross-appeal were not related to the *issues* raised by the lead appeal.  See Id. at 51 (denying pendent jurisdiction where lead appeal raised questions of qualified immunity and turned on "whether [the individual defendants] violated clearly established federal law," while the cross appeal raised questions of *respondeat superior* and turned on "the allocation of law enforcement power in Alabama.").

Thus, while it is unsurprisingly true that the *arguments* made by Defendants on the Lead Appeal will differ substantially from those *arguments* made by

Plaintiffs on the Cross Appeal, such a finding is of absolutely no moment in determining whether pendant jurisdiction is appropriate here.

Further, Defendants are completely wrong in stating that "Plaintiffs' cross-appeal raises entirely different and distinct *issues* [from the Lead Appeal]," Defs.' Br. at p. 13, as both appeals are premised upon the validity and/or enforceability of the arbitration agreements at issue. Stated otherwise—a decision on either appeal will require a detailed assessment of the doctrines of unconscionability and "effective vindication." Accordingly, the two appeals are sufficiently intertwined to trigger this Court's pendant jurisdiction.

Moreover, and critically, if this Court were to refuse pendant jurisdiction but nonetheless rule in Mr. Flores' favor on the questions of unconscionability and "effective vindication" in the Lead Appeal, the Plaintiffs would be compelled to arbitrate many of their claims despite this Court's determination that the arbitration agreements under which they have been compelled to arbitrate are unenforceable. Certainly, such a result would not serve the interest of judicial economy or advance "[t]he goals envisioned by Congress in enacting section 16 of the FAA." Freeman, 119 F.3d at 1050. Accordingly, pendant appellate jurisdiction should be extended to Plaintiffs' Cross Appeal.

B.  Second Circuit Case Law and Persuasive Authority from Other
Circuits Fully Supports Application of Pendent Jurisdiction Here

The propriety of applying pendant jurisdiction to the Cross Appeal is fully

supported under prevailing and persuasive case law, even including the cases

affirmatively cited by Defendants.

The most aligned fact pattern arose in Freeman, 119 F.3d at 1044-1050,[4]

where multiple parties to a business dispute filed dueling motions to compel

arbitration.  In short, one party (Freeman), had a dispute with another party (C3),

and asserted claims against others using theories of veil-piercing (Glazier) and

successor liability (Thompson).  The district court compelled arbitration of

Freeman's claims against C3 and Glazier, but not Thompson.  Under 9 U.S.C.

§16(a)(1), Freeman appealed the denial of the motion as to Thompson, and Glazier

cross-appealed as to the order compelling arbitration.  The Second Circuit

exercised pendent jurisdiction because "there is substantial factual overlap bearing

on the *issues* raised on the appeal and the cross-appeal" due to the interwoven

relationship between all the parties.  Id. at 1050 (emphasis added).  For the reasons

set forth above, the Lead Appeal and Cross Appeal contain far greater legal

overlap than in Freeman.  Accordingly, pendant jurisdiction is appropriate here.

---

[4]  Defendants ignored Freeman entirely.

15

Other Circuits have taken a similar approach to pendent jurisdiction where the basis for original jurisdiction was predicated on 9 U.S.C. §16. In Lyons v. PNC Bank Nat'l Assoc., 26 F.4th 180 (4th Cir. 2022), the plaintiff asserted claims under the Truth in Lending Act ("TILA") based on alleged fraud related to two accounts, one opened in 2010 ("2010 Account") and the other in 2014 ("2014 Account"); defendant moved to compel arbitration on the basis of a 2013 arbitration agreement (applicable to the 2010 Account) and a 2014 arbitration agreement (applicable to the 2014 Account). However, on June 1, 2013, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") became effective, which prohibited arbitration of covered TILA claims.

The district court held that the 2013 arbitration agreement was enforceable as to the 2010 Account because it pre-dated Dodd-Frank, but denied the motion as to claims related to the 2014 Account as the arbitration agreement related to that account post-dated Dodd-Frank. Defendant appealed the partial denial of its motion and plaintiff cross-appealed the grant of the motion as to the 2010 Account. The Fourth Circuit exercised pendent jurisdiction to hear both appeals because the lower court's "partial grant of [the defendant's motion] to compel arbitration of the 2010 account was 'inextricably intertwined' with [its] partial denial of the [motion] to compel arbitration of the 2014 account because [the] consideration of the latter necessarily resolves the former." Id. at 191. Lyons further dictates an exercise of

16

pendent jurisdiction here as both the Lead Appeal and the Cross Appeal will require consideration of and may turn issues identical to both appeals—whether the arbitration agreements are invalid or unenforceable under the doctrines of unconscionability and/or "effective vindication."

Several other Circuit Court decisions have similarly exercised pendent jurisdiction as to otherwise non-appealable issues related to appealable orders under 9 U.S.C. §16 involving the same arbitration agreement.  See e.g. Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C., 330 F.3d 523, 528 (D.C. Cir. 2003) (exercising pendent jurisdiction over an order compelling arbitration which was related to an appeal from an order confirming an interim judicial injunction and an interim arbitration award continuing that injunction); Quackenbush v. Allstate Ins. Co., 121 F.3d 1372 (9th Cir. 1997) (exercising pendent appellate jurisdiction over order compelling arbitration because that ruling was predicated on the same arbitration agreement as—and implicated the same arguments at issue in—an appeal from an order denying an injunction which is permissible under 28 U.S.C. §1292(a)); see also McCowan v. Sears. Roebuck & Co., 908 F.2d 1099, 1105 (2d Cir. 1990) ("Where the court has unquestioned jurisdiction of a cause "it would be absurd to require the court to close its eyes to another interlocutory order which, though not itself appealable, might infect the entire proceeding with error and thus require reversal after large expenditure of judicial and professional time.").

Non-FAA decisions are also informative.  The <u>Freeman</u> Court relied in part on <u>Kaluczky</u>, where a public official alleged retaliation against public officials who were members of another political party; the defendant public officials moved to dismiss on grounds of both qualified immunity and First Amendment exceptions related to political policymaker decisions; and the district court denied all aspects of the motion.  <u>Id.</u> at 205-06.  The defendants appealed on the underlying jurisdictional basis that an "order denying a motion to dismiss on the ground of qualified immunity is immediately appealable where the district court has rejected that defense as a matter of law," <u>Id.</u> at 206 (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985); <u>Hill v. City of New York</u>, 45 F.3d 653, 659-60 (2d Cir. 1995)) and simultaneously sought pendent jurisdiction as to the First Amendment issues.

The issues in <u>Kaluczky</u> were related but not identical.  The qualified immunity doctrine shields a public official from liability so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Kaluczky</u>, 57 F.3d at 207 (citing cases). In contrast, the policymaker exception to the First Amendment permits dismissal of public officials based on political affiliation for positions involving policymaking, so long as there is a "compelling interest" that "party affiliation is an appropriate requirement for effective performance of the public office involved." <u>Id.</u> at 208.  These issues were capable of distinct analysis, but the Court

18

held that the overlap was sufficient to warrant pendent jurisdiction because both issues, "entail an inquiry into the nature and extent of the rights that [plaintiff] can assert and whether [plaintiff's] rights are well settled." Id. at 207. Similarly, the Lead Appeal and Cross Appeal will entail an identical inquiry into the validity and enforceability of arbitration agreements containing a primary operative provision—that the NFL Commissioner act as arbitrator.

The Second Circuit has even used its discretion to exercise pendent appellate jurisdiction to address issues with only modest overlap. In Dube v. State University of New York, 900 F.2d 587, 598 (2d Cir. 1990), a professor at a public university asserted civil rights claims against the state and state officials; the individual defendants moved to dismiss on the basis of immunity and all defendants moved for summary judgment on the merits. The district court denied defendants' motion for immunity and largely denied defendants' motion for summary judgment on the merits. An interlocutory appeal was filed as to the denial of the immunity defenses, jurisdictionally based on 28 U.S.C. 1291. Using pendent appellate jurisdiction, the Court accepted defendants' merits appeal denying summary judgment. Id. at 598 ("In the interests of judicial economy we therefore exercise our pendent appellate jurisdiction and entertain several nonappealable yet "overlapping" issues."); see also Baez v. Hennessy, 853 F.2d 73, 74 (2d Cir. 1988) (exercising pendent appellate jurisdiction over merits of a

denial of summary judgment by a municipal party following appeal from an immunity order as to a state official).

Defendants' cited case law where pendent jurisdiction was applied only helps Plaintiffs' cause. Defendants' attempt to portray United States v. Hoskins, 902 F. 3d 69 (2d Cir. 2018) and United States v. City of New York, 717 F.3d 72 (2d Cir. 2013), where the Court engaged in pendent jurisdiction, as far afield from the matter at bar is completely incorrect. In fact, the matter at bar is an even more compelling situation for application of the doctrine.

In Hoskins, the Court reviewed a pendent issue connected to denial of a motion *in limine* together with an appeal as of right from dismissal of an indictment because both were decided "for the very same reasons." Id. at 76. Here, similarly, the District Court disagreed with Plaintiffs' unconscionability and "effective vindication" arguments for the same reasons as applicable to the issues in both the Lead Appeal and Cross appeal.

In City of New York, a disparate treatment and impact action involving entrance examinations to become a New York City firefighter, the defendant partially appealed an injunction grant. At the same time, the defendant sought review of a summary judgment decision in plaintiffs' favor on aspects of their disparate treatment claims. Although not overlapping issues, the Second Circuit

applied pendent jurisdiction to consider that appeal because the injunction decision was partially "influenced" by the disparate treatment finding.  Id. at 81.

Defendants' cited authority where pendent appellate jurisdiction was denied is also instructive by contrast.  In Rein, the plaintiffs sued Libya for alleged involvement in a terrorist attack and a motion to dismiss was denied on numerous grounds including sovereign immunity.  On appeal from the denial of sovereign immunity, defendants attempted to bootstrap an appeal from the denial of the motion to dismiss as to personal jurisdiction and failure to state a claim; the latter two of which have absolutely nothing to do with the former.  The Court explained, "We can readily decide whether the district court had subject matter jurisdiction over Libya without at all considering whether it would violate due process to subject Libya to personal jurisdiction."  Id., 162 F.3d at 759; see also id. at 762 (similar as to failure to state a claim).  In contrast, as the Court must consider Plaintiffs' same defenses to contract formation and enforcement in both the Lead Appeal and Cross Appeal, both appeals are inextricably intertwined.

In Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010), the Court declined pendent jurisdiction in a Fair Labor Standards Act action where the appealable issue was denial of class certification (as permitted under Fed. R. Civ. P. 23(f)) to which the plaintiff attempted to bootstrap an appeal from a prior order denying conditional certification under 29 U.S.C. 215(b).  Id. at 552-558.  Not only did the

Court find that the standards for those issues were analytically unique—defying the "inextricably intertwined" standard—but that the plaintiff intentionally used the permissible appeal as a mechanism to bring the nonappealable issue before the Second Circuit. Id. at 557. Thus, the Myers Court was not only faced with issues that did not overlap but fundamental concerns about pendent jurisdiction abuse. There can be no such concern here.

Defendants' cited cases of Bolmer v. Oliveira, 594 F.3d 134 (2d Cir. 2010), Jones v Parmley, 465 F.3d 46, 65 (2d Cir 2006) and Munafo v. Metropolitan Transp. Auth., 285 F.3d 201 (2d Cir. 2002) further demonstrate situations where no reasonable overlap exists. All three involved appeals from orders denying immunity, where the Second Circuit declined to exercise pendent jurisdiction over the underlying merits of the case. As Plaintiffs are not seeking any merits-based appeal, these cases have absolutely no bearing on the matter at bar.

## III.  **Plaintiffs Are Not Seeking Pendent Party Jurisdiction**

Pendent party jurisdiction refers to the potential exercise of supplemental jurisdiction over one party *because* the court has jurisdiction over a related party. See Finley v. U.S., 490 U.S. 545 (1989) (pendent party jurisdiction discussed at length); see also Swint, 514 U.S. at 48 n.6 (1995) (distinguishing pendent appellate jurisdiction and pendent party jurisdiction).

22

Plaintiffs seek pendent appellate jurisdiction, which numerous courts have exercised in circumstances where, as a result of such jurisdiction, related parties are included in an appeal.  See e.g. Freeman, 119 F.3d at 1044-50 (pendent jurisdiction resulted in jurisdiction over additional parties); Kaluczky, 57 F.3d at 207 (same); Dube, 900 F.2d at 587 (same).

In fact, this Court has held that pendent jurisdiction is oftentimes *more suspect* where the party bringing the appeal seeks pendent appellate jurisdiction on a related issue rather than a pendent party.  See e.g. Rein, 162 F.3d at 757 ("it appears, if anything, more likely that one party will appeal a flimsy collateral issue with the intention of obtaining interlocutory review for other issues it presses than that different parties will conspire to secure early appellate rulings.").

Plaintiffs are not asking the Court to invoke jurisdiction over Mr. Wilks or Mr. Horton because they are "pendent parties" to a proper appeal.  Rather, Plaintiffs are seeking pendent appellate jurisdiction because the Lead Appeal and Cross Appeal are substantively intertwined.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants' motion to dismiss the Cross

Appeal should be denied.

Dated: January 19, 2023
    New York, New York        Respectfully submitted,

                    WIGDOR LLP

                    By: */s/ Douglas H. Wigdor*
                        Douglas H. Wigdor
                        Michael J. Willemin
                        David E. Gottlieb
                        Marjorie Mesidor

                    85 Fifth Avenue
                    New York, NY 10003
                    Telephone: (212) 257-6800
                    Facsimile: (212) 257-6845
                    dwigdor@wigdorlaw.com
                    mwillemin@wigdorlaw.com
                    dgottlieb@wigdorlaw.com
                    mmesidor@wigdorlaw.com

                    *Counsel for Plaintiffs-Appellees-Cross Appellants*

**ELEFTERAKIS, ELEFTERAKIS & PANEK**


By:  */s/ John Elefterakis*
        John Elefterakis

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212 532-1176

*Counsel for Plaintiffs-Appellees-Cross Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

It is hereby certified that the foregoing opposition is in compliance with Federal Rule of Appellate Procedures 27 and 32 and with the local rules of the Second Circuit. The foregoing was printed in 14-point proportional font and, including footnotes and headings, contains 5,187 words.

Dated: January 19, 2023

WIGDOR LLP

By: */s/ Douglas H. Wigdor*
  Douglas H. Wigdor
  Michael J. Willemin
  David E. Gottlieb
  Marjorie Mesidor

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com
mmesidor@wigdorlaw.com

*Counsel for Plaintiffs-Appellees-Cross Appellants*

**ELEFTERAKIS, ELEFTERAKIS &
PANEK**


By:  */s/ John Elefterakis*
      John Elefterakis

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212 532-1176

*Counsel for Plaintiffs-Appellees-Cross
Appellants*