# 23-1185

## In the United States Court of Appeals for the Second Circuit

---

BRIAN FLORES, AS A CLASS REPRESENTATIVE,
ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,
PLAINTIFFS-APPELLEES,

STEVE WILKS, RAY HORTON, PLAINTIFFS

*v.*

NEW YORK FOOTBALL GIANTS, INC.; HOUSTON NFL HOLDINGS, L.P., DBA
HOUSTON TEXANS; DENVER BRONCOS; NATIONAL FOOTBALL LEAGUE,
DEFENDANTS-APPELLANTS,

JOHN DOE TEAMS 1 THROUGH 29; JOHN DOE TEAMS 1 THROUGH 26;
MIAMI DOLPHINS, LTD.; ARIZONA CARDINALS FOOTBALL CLUB LLC,
DBA ARIZONA CARDINALS; TENNESSEE TITANS
ENTERTAINMENT, INC., DBA TENNESSEE TITANS, DEFENDANTS

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (CIV. NO. 22-871)
(THE HONORABLE VALERIE E. CAPRONI, J.)*

---

**PAGE PROOF REPLY BRIEF OF THE NATIONAL FOOTBALL LEAGUE,
DENVER BRONCOS, NEW YORK GIANTS, AND HOUSTON TEXANS**

---

LORETTA E. LYNCH
BRAD S. KARP
LYNN B. BAYARD
BRETTE TANNENBAUM
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
   *1285 Avenue of the Americas
   New York, NY 10019*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
   *2001 K Street, N.W.
   Washington, DC 20006
   (202) 223-7300
   kshanmugam@paulweiss.com*

# TABLE OF CONTENTS

Page

I. The district court erred by holding that the arbitration provisions in the NFL Constitution are illusory under Massachusetts law...............................................................4

    A. The arbitration provisions in the NFL Constitution are not illusory...................................................4

    B. Severance would be the appropriate remedy for the asserted defect..............................................9

II. The district court erred by refusing to consider Mr. Flores's employment agreement with the Pittsburgh Steelers...........................11

    A. The district court should have considered the copy of the Steelers agreement approved by the NFL Commissioner .....................................12

    B. The Steelers agreement was enforceable under Pennsylvania law even before the NFL Commissioner's approval .................................13

III. Mr. Flores's alternative grounds for affirmance should be rejected ...................................................................14

    A. The Court should decline to review the alternative grounds for affirmance ...................................15

    B. The arbitration provisions in the NFL Constitution are valid and enforceable ..........................................17

        1. The arbitration provisions in the NFL Constitution are not unconscionable ..............................17

        2. The arbitration provisions in the NFL Constitution do not violate the effective-vindication doctrine .................23

        3. Severance would be the appropriate remedy for the asserted defect........................................25

    C. The arbitration provisions in the Steelers agreement apply to Mr. Flores's claim ..........................................27

# TABLE OF AUTHORITIES

Page

## CASES

*American Almond Products Co.* v. *Consolidated Pecan Sales Co.*, 144 F.2d 448 (2d Cir. 1944)......................................................21, 22, 23

*American Express Co.* v. *Italian Colors Restaurant*, 570 U.S. 228 (2013).............................................................................23, 24

*Armendariz* v. *Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (Cal. 2000)..........................................................................24

*Borough of Ambridge Water Authority* v. *Columbia*, 328 A.2d 498 (Pa. 1974)...............................................................................27

*Cadillac Automobile Co.* v. *Engeian*, 157 N.E.2d 657 (Mass. 1959) ........................................................................10

*Cardinal* v. *Kindred Healthcare, Inc.*, 155 A.3d 46 (Pa. Super. Ct. 2017).............................................................18, 19

*Cedeno* v. *Sasson*, 100 F.4th 386 (2d Cir. 2024).............................................24

*CILP Associates, L.P.* v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114 (2d Cir. 2013) .........................................................................15

*City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ........................................................................7, 8

*Coinbase, Inc.* v. *Bielski*, 599 U.S. 736 (2023) ...........................................17, 23

*Cole* v. *Burns International Security Services*, 105 F.3d 1465 (D.C. Cir. 1997)......................................................................24

*Cruz* v. *AerSale, Inc.*, Civ. No. 22-857, 2024 WL 22092 (D.N.M. Jan. 1, 2024)................................24

*Currency Conversion Fee Antitrust Litigation, In re*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005)...........................................................29

ii

Page

Cases—continued

*Doctor's Associates, Inc.* v. *Distajo,*
66 F.3d 438 (2d Cir. 1995) .................................................5

*El Puente* v. *U.S. Army Corps of Engineers,*
100 F.4th 236 (D.C. Cir. 2024) ..........................................8

*Everytown for Gun Safety Support Fund* v. *ATF,*
984 F.3d 30 (2d Cir. 2020) .................................................8

*Feeney* v. *Dell Inc.,*
34 N.E.3d 780, 2015 WL 4460182 (Mass. App. July 22, 2015) .....................5

*First Financial Insurance Co.* v. *Allstate Interior Demolition Corp.,* 193 F.3d 109 (2d Cir. 1999)..................................................13

*Gair* v. *Great Star Tools USA, Inc.,*
Civ. No. 21-976, 2024 WL 711612 (M.D. Pa. Feb. 21, 2024).....................28

*Gilmer* v. *Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991).............................................................24

*Granite Rock Co.* v. *International Brotherhood of Teamsters,*
561 U.S. 287 (2010)...........................................................27

*Hanson* v. *Cable,*
A138208, 2015 WL 1739487 (Cal. Ct. App. Apr. 15, 2015)...........................20

*Harrison* v. *Envision Management Holding, Inc., Board of Directors,* 59 F.4th 1090 (10th Cir. 2023).......................................24

*Henry* v. *New Orleans Louisiana Saints L.L.C.,*
Civ. No. 15-5971, 2016 WL 2901775 (E.D. La. May 18, 2016) .....................20

*Hojnowski* v. *Buffalo Bills, Inc.,*
995 F. Supp. 2d 232 (W.D.N.Y. 2014) ...........................................20

*Hooters of America, Inc.* v. *Phillips,* 173 F.3d 933 (4th Cir. 1999)..................22

Page

Cases—continued

*ING Bank N.V.* v. *M/V TEMARA, IMO No. 9333929*,
   892 F.3d 511 (2d Cir. 2018) ...................................................................12

*Jackson* v. *Action for Boston Community Development, Inc.*,
   525 N.E.2d 411 (Mass. 1988) ...................................................4, 5, 6

*Jacobson* v. *Florida Secretary of State*,
   974 F.3d 1236 (11th Cir. 2020)..............................................................26

*Klay* v. *All Defendants*, 389 F.3d 1191 (11th Cir. 2004)...................................28

*Machado* v. *System4 LLC*, 28 N.E.3d 401 (Mass. 2015) ...........................18, 19

*Managed Care Litigation, In re*,
   Civ. No. 00-1334, 2003 WL 22410373 (S.D. Fla. Sept 15, 2003)...................28

*Masoner* v. *Education Management Corp.*,
   18 F. Supp. 3d 652 (W.D. Pa. 2014).................................................27

*Merit Insurance Co.* v. *Leatherby Insurance Co.*,
   714 F.2d 673 (7th Cir. 1983)..........................................................22

*New York Knicks, LLC* v. *Maple Leaf Sports & Entertainment Ltd.*,
   Civ. No. 23-7394, 2024 WL 3237563 (S.D.N.Y. June 28, 2024) ..............16, 20

*NFL Management Council* v. *NFL Players Association*,
   820 F.3d 527 (2d Cir. 2016) .................................................20, 21, 22

*NFL Players Association* v. *NFL*,
   831 F.3d 985 (8th Cir. 2016)..............................................15, 20, 21

*NFL* v. *Gruden*,
   548 P.3d 775, 2024 WL 2178990 (Nev. May 14, 2024),
   *petition for rehearing en banc filed*, No. 85527 (July 29, 2024) ..........6, 7, 18

*Nino* v. *Jewelry Exchange, Inc.*,
   609 F.3d 191 (3d Cir. 2010) ..........................................................19

iv

Page

Cases—continued

*O'Brien* v. *New England Telephone & Telegraph Co.*,
664 N.E.2d 843 (Mass. 1996) ................................................................4, 5, 6

*Parisi* v. *Goldman, Sachs & Co.*,
710 F.3d 483 (2d Cir. 2013) ............................................................21

*Perez* v. *Mortgage Bankers Association*,
575 U.S. 92 (2015)................................................................8

*Poch* v. *Equitable Life Assurance Society*,
22 A.2d 590 (Pa. 1941)................................................................14

*Pokorny* v. *Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010)................................................19, 22

*Porreca* v. *Rose Group*,
Civ. No. 13-1674, 2013 WL 6498392 (E.D. Pa. Dec. 11, 2013)......................19

*PPG Industries, Inc.* v. *Webster Auto Parts, Inc.*,
128 F.3d 103 (2d Cir. 1997) ............................................................30

*Preston* v. *Ferrer*,
552 U.S. 346 (2008)................................................................29

*Reyes* v. *Gracefully, Inc.*,
Civ. No. 17-9328, 2018 WL 2209486 (S.D.N.Y. May 11, 2018)......................24

*Russell* v. *Citigroup, Inc.*,
748 F.3d 677 (6th Cir. 2014)................................................................28

*Spinetti* v. *Service Corp. International*,
324 F.3d 212 (3d Cir. 2003) ............................................................25

*Stewart* v. *Marshall Contractors, Inc.*,
No. 8944, 1990 WL 640611 (Mass. Super. Ct. May 23, 1990)......................10

*Stirlen* v. *Supercuts, Inc.*,
60 Cal. Rptr. 2d 138 (Ct. App. 1997) ................................................19

Page

Cases—continued

*Tara Gold Resource Corp.* v. *SEC,*
678 F.3d 557 (7th Cir. 2012).....................................................26

*TradeComet.com LLC* v. *Google, Inc.,*
435 Fed. Appx. 31 (2d Cir. 2011).................................................27

*Tripathy* v. *McKoy,*
103 F.4th 106 (2d Cir. 2024).......................................................23

*United States* v. *Hage,* 74 F.4th 90 (2d Cir. 2023)...............................16

*Universal Builders, Inc.* v. *Moon Motor Lodge, Inc.,*
244 A.2d 10 (Pa. 1968)...............................................................14

*Walker* v. *Ryan's Family Steak Houses, Inc.,*
400 F.3d 370 (6th Cir. 2005).......................................................25

*Weinstein* v. *Jenny Craig Operations, Inc.,*
No. 105520/11, 2014 WL 10680367 (N.Y. Sup. Ct. Sept. 8, 2014) ..............29

*Williams* v. *Cigna Financial Advisors Inc.,*
197 F.3d 752 (5th Cir. 1999).......................................................24

*Williams* v. *NFL,*
582 F.3d 863 (8th Cir. 2009).......................................................20

*Witmer* v. *Exxon Corp.,*
434 A.2d 1222 (Pa. 1981)............................................................18

*Woebse* v. *Health Care & Retirement Corp.,*
977 So. 2d 630 (Fla. Dist. Ct. App. 2008).....................................19

*Yocca* v. *Pittsburgh Steelers Sports, Inc.,*
854 A.2d 425 (Pa. 2004).............................................................29

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ................................2, 15, 27

Page

Statutes—continued

9 U.S.C. § 10(a)(2) .............................................................16

9 U.S.C. § 16 .....................................................................17

## MISCELLANEOUS

Richard A. Lord, *Williston on Contracts* (4th ed.) ......................................13, 26

*Black's Law Dictionary* (11th ed. 2019) ........................................................7, 25

As defendants have demonstrated, the district court erred by declining to compel arbitration of Mr. Flores's claims pursuant to his employment agreements with the Patriots and the Steelers. Contrary to the district court's conclusion, the Patriots agreement was not illusory merely because it incorporated subsequent amendments to the NFL Constitution. The Patriots lacked any unilateral authority to amend the NFL Constitution, and the NFL Constitution is incorporated by reference into his employment agreement, which is indisputably supported by mutual consideration. Indeed, Mr. Flores does not (and cannot) contend that the arbitration provisions in the NFL Constitution were ever amended thereafter, making any potential harm from the possibility of amendment entirely hypothetical. Nor was the district court correct to decline to enforce the Steelers agreement: the district court improperly raised the issue of the NFL Commissioner's missing approval on its own initiative, and the agreement was valid and enforceable in any event because both parties performed under it.

Mr. Flores offers little defense of the district court's reasoning. Instead, he relies on alternative grounds for affirmance and buries his responses to defendants' arguments at the back of his brief. For good reason: he has no compelling responses in the face of the district court's obvious errors.

Regarding the Patriots agreement: Mr. Flores relies on the same authorities cited by the district court to argue that the agreement was illusory.

But as defendants have shown, those cases involved situations in which an at-will employee argued that an employee handbook constituted an employment contract. That is not the case here, where Mr. Flores had a contract that guaranteed him salary and benefits in exchange for his services and other commitments, including adhering to the agreement's valid incorporation of the NFL Constitution.

As for the Steelers agreement: Mr. Flores says even less in support of the district court's decision to raise the NFL Commissioner's missing approval on its own initiative without providing the parties notice and an opportunity to be heard. He also fails to distinguish defendants' authorities.

Mr. Flores's alternative grounds for affirmance fare no better. As a threshold matter, this Court should decline to consider those arguments because they raise premature factual issues and would require this Court to depart from its traditional role of review rather than first view. And by challenging the district court's reasoning in the portion of its order compelling arbitration, Mr. Flores is attempting improperly to circumvent the jurisdictional limits imposed by the Federal Arbitration Act and this Court's recent order dismissing his cross-appeal.

In any event, Mr. Flores's alternative grounds for affirmance lack merit. Mr. Flores has not shown that the arbitration provisions in the NFL Constitution are both procedurally and substantively unconscionable or prevent the

2

effective vindication of federal statutory rights. Mr. Flores is a veteran league coach who has repeatedly represented that he read and understood the terms of the NFL Constitution and who negotiated a substantial salary and other benefits before entering into his employment agreements. Such circumstances bear no resemblance to those in cases of procedural unconscionability.

Nor is there anything substantively improper about the designation of the Commissioner as the default arbitrator. As Mr. Flores does not dispute, that is a common practice across sports leagues, and one that both this Court and others have upheld when parties, as here, knowingly and specifically agreed to the arrangement. Mr. Flores's argument based on the effective-vindication doctrine fails for the same reasons, and for the additional reason that the doctrine does not apply to instances of alleged arbitrator bias. Even if Mr. Flores's unconscionability and effective-vindication arguments had merit, moreover, the proper remedy would be to sever the language in the arbitration agreements designating the Commissioner as the default arbitrator, not to invalidate the agreements altogether.

Mr. Flores's alternative ground for affirmance concerning the Steelers agreement is similarly unpersuasive. Mr. Flores points to nothing in the broad arbitration provisions in the Steelers agreement that precludes their application to claims that arose before the agreement's formation.

In sum, Mr. Flores's agreements to arbitrate are valid, enforceable, and applicable to this case. The district court erred by declining to compel arbitration of his claims against the Broncos, Giants, and Texans, as well as his related claims against the NFL. The district court's orders should be vacated in relevant part and the case remanded for further proceedings.

## I. THE DISTRICT COURT ERRED BY HOLDING THAT THE ARBITRATION PROVISIONS IN THE NFL CONSTITUTION ARE ILLUSORY UNDER MASSACHUSETTS LAW

The district court erred both by holding that the arbitration provisions in the NFL Constitution—which are incorporated by reference into Mr. Flores's employment agreement with the Patriots—are illusory and by refusing to sever any objectionable provision in the Patriots agreement.

### A. The Arbitration Provisions In The NFL Constitution Are Not Illusory

The arbitration provisions in the NFL Constitution are not illusory under Massachusetts law, both because the provisions are supported by consideration from Mr. Flores's employment agreement and because the Patriots have no unilateral authority to modify the NFL Constitution. *See* Br. of Appellants 25-32. Mr. Flores's contrary arguments lack merit.

1. Like the district court, Mr. Flores heavily relies (Br. 41-43) on *Jackson* v. *Action for Boston Community Development, Inc.*, 525 N.E.2d 411 (Mass. 1988), and *O'Brien* v. *New England Telephone & Telegraph Co.*, 664 N.E.2d 843 (Mass. 1996), for the proposition that the Patriots agreement was

4

illusory. Those cases examined the question whether a personnel manual constituted an implied contract for an at-will employee where the employer had the unilateral ability to modify the manual. *See* Br. of Appellants 29-30. This case is fundamentally different, because Mr. Flores had an employment agreement that incorporated by reference the arbitration provisions in the NFL Constitution. *See id.* at 31-32. The employment agreement was supported by consideration (such as his salary and benefits) and could not be "changed or modified" without mutual, written consent. J.A. 1217.

Mr. Flores faults defendants for relying on "general" principles of contract law to distinguish *Jackson* and *O'Brien*. *See* Br. of Appellee 44. But those black-letter principles plainly foreclose Mr. Flores's attempt to extend *Jackson* and *O'Brien* beyond their specific contexts. Indeed, both this Court and others have applied the same basic principles of contract law to reject arguments that arbitration provisions are illusory or lack mutuality where "the agreement to arbitrate is integrated into a larger unitary contract." *Doctor's Associates, Inc.* v. *Distajo*, 66 F.3d 438, 453 (2d Cir. 1995) (citation omitted); *see, e.g.*, *id.* at 451-452 (collecting cases); *cf. Feeney* v. *Dell Inc.*, 34 N.E.3d 780, 2015 WL 4460182, at *3-*5 & n.14 (Mass. App. July 22, 2015) (unpublished) (reaching the same conclusion under Texas law but noting the defendant's concession that Massachusetts law does "not differ" on this issue).

Mr. Flores claims (Br. 42-44) that courts often find unilateral-modification provisions to be unenforceable. Those cases did not address whether the contracts at issue were supported by their own consideration. *See* Br. of Appellants 32-33 n.2. And in *NFL* v. *Gruden*, 548 P.3d 775, 2024 WL 2178990 (May 14, 2024) (unpublished), *petition for rehearing en banc filed*, No. 85527 (July 29, 2024), the Nevada Supreme Court recently agreed with defendants' position that a coaching contract's incorporation of subsequent amendments to the NFL Constitution does not render the Constitution's arbitration provisions illusory, "given the consideration that support[ed] the employment agreement" as a whole. *Id.* at *5.

2. The arbitration provisions in the NFL Constitution fall outside the principle articulated in *Jackson* and *O'Brien* for an additional, independent reason. *Jackson* and *O'Brien* turn on the fact that a party with ability to modify a contract unilaterally has the power effectively to choose whether to abide by the contract. *See Jackson*, 525 N.E.2d at 415; *O'Brien*, 664 N.E.2d at 847-849. But the Patriots, as an NFL member club, were required to comply with the NFL Constitution, J.A. 584-585, and they did not have unilateral authority to amend it. Instead, the Constitution can be amended only by a vote of three-fourths of the NFL's 32 member clubs. J.A. 696-697. The Patriots thus could not choose whether to comply with the NFL Constitution; they were required to follow all of the provisions in force when they signed Mr. Flores, unless a

6

supermajority of clubs amended a particular provision. The principle recognized by *Jackson* and *O'Brien* thus would not apply here even if the NFL Constitution were an entirely separate contract from Mr. Flores's employment agreement with the Patriots. *Cf. Gruden*, 2024 WL 2178990, at *5. Indeed, Mr. Flores's complaint is entirely academic because he does not (and cannot) argue that the arbitration provisions in the NFL Constitution have been amended.

Mr. Flores asserts (Br. 45 n.14) that it does not matter that the Patriots lack the unilateral authority to modify the NFL Constitution, because the NFL Commissioner has such authority. As a preliminary matter, Mr. Flores has forfeited that argument by raising it only in a footnote. *See City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). And it is unclear why the Commissioner's ability to amend the NFL Constitution would be relevant, given that he is not a party to the Patriots agreement. But in any event, the premise of Mr. Flores's argument is incorrect: the Commissioner does not have authority to amend the NFL Constitution. *See* J.A. 696-697 (provisions of NFL Constitution on amendments). Contrary to Mr. Flores's assertion (Br. 45 n.14), the Commissioner's authority to "interpret" the NFL Constitution and "establish policy and procedure" concerning its provisions does not give him the authority to *amend* it—that is, to "formally alter" it "by striking out, inserting, or substituting words." *Black's Law Dictionary* 101

(11th ed. 2019); *cf. Perez* v. *Mortgage Bankers Association*, 575 U.S. 92, 103 (2015) (distinguishing between the power to amend and the power to interpret).

Mr. Flores also argues (Br. 45 n.14) that defendants cannot raise the Patriots' inability to modify the NFL Constitution unilaterally because they failed to raise it below. But again, Mr. Flores forfeited that argument by raising it only in a footnote. *See Mickalis Pawn Shop*, 645 F.3d at 137; *El Puente* v. *U.S. Army Corps of Engineers*, 100 F.4th 236, 256 (D.C. Cir. 2024). In any event, defendants objected to the district court's holding that the Patriots agreement was illusory, and in renewing that objection, they are "not limited to the precise arguments they made below." *Everytown for Gun Safety Support Fund* v. *ATF*, 984 F.3d 30, 38 n.4 (2d Cir. 2020) (citation omitted).

3.      Finally, Mr. Flores contends (Br. 40 n.13) that abuse-of-discretion review applies to the denial of defendants' motion for reconsideration on this issue, because Mr. Flores raised the illusoriness argument in his original opposition to the motion to compel arbitration. As before, Mr. Flores raised this argument only in a footnote, so it is forfeited. *See Mickalis Pawn Shop*, 645 F.3d at 137. The argument also lacks merit. Mr. Flores never argued in his original opposition that any of the arbitration provisions were illusory; instead, he simply mentioned that the NFL Constitution could be amended in the course of arguing that the arbitration provisions at issue were

8

"unconscionable." J.A. 283.  The district court's ruling on the issue should thus be reviewed de novo.  *See* Br. of Appellants 22.

## B.    Severance Would Be The Appropriate Remedy For The Asserted Defect

Mr. Flores does not dispute that his employment agreement with the Patriots has a severability clause and that Massachusetts law favors severance over wholesale invalidation of contracts.  *See* Br. of Appellants 34-35.  Severance would be the appropriate remedy if the contract were defective, and Mr. Flores's contrary arguments are unpersuasive.

Like the district court, Mr. Flores argues (Br. 46) that the purportedly objectionable provision in the Patriots agreement cannot be severed because the agreement is illusory.  But for the reasons discussed above, the *arbitration provisions* in the NFL Constitution are not illusory, and thus there is no general bar to severance.  *See* pp. 4-8, *supra*.  Nor is Mr. Flores correct (Br. 49) that defendants forfeited their severability argument by failing to raise it in their original briefing on the motion to compel arbitration.  It would be improper to apply forfeiture here given that the district court raised the illusoriness of the arbitration provisions on its own initiative and failed to provide defendants notice and an opportunity to be heard on the issue.  *See* Br. of Appellants 35-36; pp. 8-9, *supra*.

Mr. Flores additionally argues (Br. 48) that the severability clause in his employment agreement with the Patriots would not authorize severance of the

language "and as amended from time to time hereafter" from his agreement, because the clause authorizes only the severance of "provisions." Mr. Flores offers no authority establishing that the term "provision" refers exclusively to entire sections or paragraphs of legal documents, and Massachusetts courts have construed the term as allowing severance of particularized "language" in an agreement. *Stewart* v. *Marshall Contractors, Inc.*, No. 8944, 1990 WL 640611, at *3 (Mass. Super. Ct. May 23, 1990) (citation omitted). Even if there were some doubt about the exact scope of the severability clause, moreover, severance in this case would be supported by the longstanding principle of contract interpretation that, "if the part of a contract which is valid can be separated from that which is void, and carried into effect, it may be done." *Cadillac Automobile Co.* v. *Engeian*, 157 N.E.2d 657, 660 (Mass. 1959) (citation and alterations omitted).

Mr. Flores further suggests that "the concept of abiding by amended versions of the NFL's rules is interspersed throughout" his employment agreement with the Patriots—specifically, in Sections 16 and 17. Br. 48-49. But he does not argue that those two provisions independently render his employment agreement illusory. And at most, his argument shows that the Court may also choose to sever the phrases "then current" and "then in effect" from Sections 16 and 17, respectively. Mr. Flores has not identified any obstacle to

severing those five additional words, and the Court should do so to the extent it deems additional severance necessary.

Finally on this score, Mr. Flores argues that provisions of the NFL Constitution—as incorporated by reference into his employment agreement with the Patriots—cannot be severed. *See* Br. 48 & n.15. That is a red herring (and incorrect to boot, *see* pp. 25-26, *infra*). Mr. Flores's agreement with the Patriots itself contains the incorporation of prospective amendments to the NFL Constitution, and any defect created by that incorporation can be entirely resolved by severing language from the Patriots agreement.

## II. THE DISTRICT COURT ERRED BY REFUSING TO CONSIDER MR. FLORES'S EMPLOYMENT AGREEMENT WITH THE PITTSBURGH STEELERS

The district court separately erred by holding that Mr. Flores's employment agreement with the Steelers was invalid and unenforceable on the ground that the copy originally submitted by defendants did not display the NFL Commissioner's approval. That conclusion was procedurally erroneous, because the court raised the issue on its own initiative and did not provide defendants notice or an opportunity to be heard. *See* Br. of Appellants 36-39, 40-43. It was also substantively erroneous, both because the Commissioner *had* in fact approved an identical copy of the agreement and because the parties had performed under the agreement for its entire duration. *See id.* at 39-40, 43-46.

11

**A.    The District Court Should Have Considered The Copy Of The Steelers Agreement Approved By The NFL Commissioner**

This Court's precedents clearly demonstrate that the district court erred by denying defendants' motion to compel arbitration on a ground not raised by Mr. Flores without giving defendants an opportunity to respond. Mr. Flores argues that all of the authorities cited in defendants' opening brief are distinguishable because they did not "involve a moving party being held responsible for failing to provide necessary documents." Br. 53. That is incorrect. Defendants repeatedly cited a case in which a district court improperly ruled against a moving party based on the party's failure to provide adequate "documentation." *ING Bank N.V.* v. *M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 517-518, 524 (2d Cir. 2018); *see* Br. of Appellants 37, 39, 41, 45. In any event, Mr. Flores fails to explain why the failure to provide adequate documentation would distinguish this case from others in which a district court erred by ruling against a moving party without providing notice and an opportunity to be heard.

Mr. Flores's attempt to focus on the district court's denial of defendants' motion for reconsideration, rather than its original order (Br. 52), is misdirection. The district court's error was in the original order, which denied the motion to compel arbitration in relevant part without providing defendants with notice and an opportunity to be heard. The district court should have remedied its error by granting defendants' motion for reconsideration, and its

12

failure to do so cannot be insulated by the reconsideration standard. *See, e.g., First Financial Insurance Co.* v. *Allstate Interior Demolition Corp.*, 193 F.3d 109, 119-120 (2d Cir. 1999); Br. of Appellants 41.

Mr. Flores is also incorrect (Br. 51-52) that the district court erred as a result of defendants' own "neglect." Defendants had no reason to supplement the record earlier, given that no one (including Mr. Flores) had previously identified any problem with the missing approval on the identical agreement. *See* Br. of Appellants 41-42. Mr. Flores further fails to address the fact that defendants can simply file a renewed motion to compel arbitration based on the Commissioner-approved version of the agreement. *See* Br. of Appellee 53 n.16; Br. of Appellants 42-43. Because there is no reason to require defendants to leap through that unnecessary procedural hoop, the Court should vacate the district court's order in relevant part and direct the district court to consider the Commissioner-approved copy of the agreement on remand.

### B. The Steelers Agreement Was Enforceable Under Pennsylvania Law Even Before The NFL Commissioner's Approval

Mr. Flores offers no authority to rebut the well-settled proposition that a contractual condition can be excused if parties "continu[e] to perform or accept[] performance under the contract and receiv[e] the benefit of it." 13 Richard A. Lord, *Williston on Contracts* § 39:31, at 697 (4th ed. 2013). Nor does he dispute that the parties continued to perform and accept performance during

the customary period between signing and approval by the Commissioner. *See* Br. of Appellants 45-46.

Instead, Mr. Flores contends that defendants have cited no authority for the proposition that "an express condition precedent to a contract should be disregarded and ignored absent express waiver." Br. 55. Once again, that is incorrect. Defendants cited two authorities in their opening brief for precisely that proposition. *See* Br. 44 (citing *Universal Builders, Inc.* v. *Moon Motor Lodge, Inc.*, 244 A.2d 10, 17 (Pa. 1968), and *Poch* v. *Equitable Life Assurance Society*, 22 A.2d 590, 594-595 (Pa. 1941)). As applied to the facts here, those cases demonstrate that the Steelers agreement was enforceable during the customary period between signing and the Commissioner's approval. The district court's contrary decision was erroneous.

## III. MR. FLORES'S ALTERNATIVE GROUNDS FOR AFFIRMANCE SHOULD BE REJECTED

Mr. Flores devotes most of his brief to arguing that the district court's order denying the motion to compel arbitration in part can be affirmed on alternative grounds. Specifically, he contends (Br. 19-40, 55-57) that the arbitration provisions in the NFL Constitution are unconscionable, violate the effective-vindication doctrine, and do not apply to his current lawsuit insofar as they are incorporated by reference into his employment agreement with the Steelers. This Court should decline to exercise its discretion to review those alternative grounds. In any event, Mr. Flores's arguments fail on the merits.

**A.  The Court Should Decline To Review The Alternative Grounds For Affirmance**

This Court's decision whether to address alternative grounds for affirmance is "purely discretionary." *CILP Associates, L.P.* v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 127 (2013).  There are several compelling reasons that the Court should decline to do so here.

As an initial matter, the premise of most of the alternative grounds for affirmance—that the Commissioner will serve as arbitrator—lacks support in the record and is premature.  The Commissioner has the authority to select an arbitrator other than himself, *see*, *e.g.*, J.A. 1196-1197; has done so in the past, *see*, *e.g.*, *NFL Players Association* v. *NFL*, 831 F.3d 985, 990 (8th Cir. 2016); and is likely to do so here.  Mr. Flores questions the Commissioner's authority to do so (Br. 10 n.3), suggesting that the NFL's Dispute Resolution Procedural Guidelines (which authorize the Commissioner to select a third-party arbitrator) are not incorporated into the Patriots and Steelers agreements.  That argument, made only in a footnote, is forfeited for now-familiar reasons. *See* p. 7, *supra*.  It also ignores that the Commissioner's authority under the NFL Constitution to "establish policy and procedure in respect to the provisions of the Constitution and Bylaws" allows him to select a third-party arbitrator.  J.A. 604.

In any event, even if the Commissioner does not select a third-party arbitrator, the Federal Arbitration Act makes clear that questions concerning

"partiality or corruption in the arbitrators" should be addressed only *after* an award is entered. 9 U.S.C. § 10(a)(2). Mr. Flores's claims thus are "premature," "akin to a complaint about the officiating before the game has even started." *New York Knicks, LLC* v. *Maple Leaf Sports & Entertainment Ltd.*, Civ. No. 23-7394, 2024 WL 3237563, at *11 (S.D.N.Y. June 28, 2024).

What is more, Mr. Flores's alternative grounds for affirmance would require this Court to act outside of its traditional role "[a]s a court of review, not first view." *United States* v. *Hage*, 74 F.4th 90, 95-96 (2023). Although the district court addressed unconscionability and effective-vindication challenges with respect to other arbitration agreements at issue below, it did not do so with respect to the Patriots or Steelers agreements. Mr. Flores's challenges would therefore require this Court to "pore over the factual circumstances surrounding distinct arbitration agreements," J.A. 1173, and to analyze separate bodies of state contract law in the first instance. Mr. Flores asserts (once again in a footnote) that the different states have "nearly identical" standards for unconscionability. *See* Br. 21 n.4. If the Court even considers that forfeited argument, *see* p. 7, *supra*, he offers no support for his claim that each of those states would resolve his specific challenges in the same way, and this Court rebuffed a similar argument in denying a cross-appeal from Mr. Flores and his co-plaintiffs. *See* C.A. Dkt. 104, at 12; C.A. Dkt. 120.

Mr. Flores also expends significant effort (Br. 21-34, 38-39) challenging the district court's rejection of his arguments in connection with other arbitration agreements at issue below. To the extent that Mr. Flores is seeking a ruling that would undermine the district court's order compelling arbitration of claims not at issue in this appeal, that would be blatantly improper. Under the Federal Arbitration Act, "Congress provided for immediate interlocutory appeals of orders *denying*—but not of orders *granting*—motions to compel arbitration." *Coinbase, Inc.* v. *Bielski*, 599 U.S. 736, 740 (2023); *see* 9 U.S.C. § 16. Mr. Flores has previously sought to secure appellate review of the portion of the district court's order compelling arbitration, and he has been rebuffed both by the district court and by this Court. *See* J.A. 1168-1177; C.A. Dkt. 120. Mr. Flores should not be permitted to use this appeal as a backdoor method of obtaining such review.

## B. The Arbitration Provisions In The NFL Constitution Are Valid And Enforceable

Mr. Flores's alternative grounds for affirmance also fail on the merits.

### 1. *The Arbitration Provisions In The NFL Constitution Are Not Unconscionable*

Mr. Flores first argues (Br. 21-34) that the arbitration provisions in the NFL Constitution are unconscionable because the Commissioner is the default arbitrator. Under Massachusetts and Pennsylvania law, he must show both procedural and substantive unconscionability to prevail on an

unconscionability defense. *See*, *e.g.*, *Machado* v. *System4 LLC*, 28 N.E.3d 401, 414 (Mass. 2015); *Cardinal* v. *Kindred Healthcare, Inc.*, 155 A.3d 46, 53 (Pa. Super. Ct. 2017). Mr. Flores cannot meet either requirement.

      a.      Mr. Flores cannot show that the arbitration provisions in the NFL Constitution are procedurally unconscionable, because he experienced neither "unfair surprise" nor a lack of "meaningful choice" in entering into his agreements. *Machado*, 28 N.E.3d at 414 (citation omitted); *see Witmer* v. *Exxon Corp.*, 434 A.2d 1222, 1228 & n.16 (Pa. 1981) (citations omitted). Mr. Flores is a veteran league coach who, over the course of his lengthy career, has entered into multiple employment agreements containing the same arbitration provisions in the NFL Constitution. *See*, *e.g.*, J.A. 1206, 1268. Before signing the agreements at issue, Mr. Flores expressly represented that he had "read the NFL Constitution . . . and underst[ood] [its] meaning." *Id.* at 1206; *see id.* 1268. And he negotiated a significant salary and other benefits in exchange for his coaching services. *See id.* at 1202-1203, 1264-1265. Mr. Flores can hardly claim unfair surprise or a lack of meaningful choice in entering into those agreements. *Cf. Gruden*, 2024 WL 2178990, at *4-*5 (rejecting a former NFL head coach's similar unconscionability defense to arbitration under the NFL Constitution).

      Mr. Flores cites various authorities in support (Br. 34-35), but they only highlight the absence of procedural unconscionability here. Those decisions

involve much less sophisticated plaintiffs, such as an employee "in debt, living with his parents, . . . behind in his student loans," and "desperately in need of a job," *Porreca* v. *Rose Group*, Civ. No. 13-1674, 2013 WL 6498392, at *9 (E.D. Pa. Dec. 11, 2013), and markedly more oppressive conditions, such as a party who was informed during a meeting lasting "five minutes" that she needed to sign a 37-page document in order to allow her "gravely ill" father to continue his stay in his nursing home, *Woebse* v. *Health Care & Retirement Corp.*, 977 So. 2d 630, 633 (Fla. Dist. Ct. App. 2008). A well-paid, long-tenured NFL coach is a far cry from a plaintiff deprived of "any opportunity to negotiate" any terms of his employment contract, *Nino* v. *Jewelry Exchange, Inc.*, 609 F.3d 191, 201 (3d Cir. 2010), or from whom terms of the contract were withheld, *see Pokorny* v. *Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010); *see also Stirlen* v. *Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 146 (Ct. App. 1997).

b.      Mr. Flores also cannot show that the arbitration provisions in the NFL Constitution are so "oppressive" that they are substantively unconscionable. *See Machado*, 28 N.E.3d at 414; *Cardinal*, 155 A.3d at 53.

Mr. Flores argues at length (Br. 21-34) that the NFL Commissioner is a biased arbitrator. As already noted, *see* p. 15, it is unlikely that the Commissioner will serve as the arbitrator. But even if he does, Mr. Flores's challenge is premature. *See* pp. 15-16, *supra*. And beyond that, Mr. Flores ignores that it is a common practice for the commissioner of a professional sports league to

arbitrate claims involving the league, member clubs, players, and coaches. This Court upheld that practice in *NFL Management Council* v. *NFL Players Association*, 820 F.3d 527 (2016), explaining that, because "arbitration is a matter of contract," "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen." *Id.* at 548. The parties in that case had entered into the contract "knowing full well" that the NFL Commissioner would "sit as the arbitrator"; if they had wanted "to restrict the Commissioner's authority," they "could have fashioned a different agreement." *Id.*

Courts across the country have likewise upheld the NFL Commissioner's ability to arbitrate or to designate an arbitrator for disputes. *See, e.g.*, *NFL Players Association*, 831 F.3d at 998; *Williams* v. *NFL*, 582 F.3d 863, 886 (8th Cir. 2009); *Henry* v. *New Orleans Louisiana Saints L.L.C.*, Civ. No. 15-5971, 2016 WL 2901775, at *9 (E.D. La. May 18, 2016); *Hojnowski* v. *Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 239-240 (W.D.N.Y. 2014); *Hanson* v. *Cable*, A138208, 2015 WL 1739487, at *2, *6-*8 (Cal. Ct. App. Apr. 15, 2015) (unpublished). Just two months ago, a district court in this circuit rejected a similar bias-related challenge to the NBA Commissioner's authority to arbitrate certain disputes, concluding that the challenge was "foreclosed" by this Court's precedent. *New York Knicks*, 2024 WL 3237563, at *11-*12. Mr.

Flores provides no basis to think that Massachusetts or Pennsylvania law would depart from that well-reasoned body of precedent.

Mr. Flores's attempts to distinguish that body of precedent are unavailing. He argues that *NFL Management Council* is "fundamentally inapplicable" because it involved player discipline, rather than federal anti-discrimination laws, and because the arbitration provision at issue was the result of collective bargaining. Br. 25-26. But as the district court explained, this Court "relied on neither fact in reaching its decision." S.A. 44. And there is no question that employment-discrimination claims are arbitrable, regardless of whether the arbitration agreement was the result of collective bargaining. *See*, *e.g.*, *Parisi* v. *Goldman, Sachs & Co.*, 710 F.3d 483, 485-487 (2d Cir. 2013).

Mr. Flores further argues (Br. 23-24) that *NFL Management Council* and similar decisions involved challenges to arbitrator bias after the arbitrations had occurred, rather than challenges to arbitration agreements based on unconscionability. But the reasoning in those decisions is not so limited. *See*, *e.g.*, *NFL Management Council*, 820 F.3d at 548; *NFL Players Association*, 831 F.3d at 998. And their rationale can be traced to Judge Learned Hand's opinion in *American Almond Products Co.* v. *Consolidated Pecan Sales Co.*, 144 F.2d 448 (2d Cir. 1944), which broadly explained that those who agree to arbitration "must be content with its informalities" and with "looser approximations to the enforcement of their rights than those that the law accords

them." *Id.* at 451; *see Merit Insurance Co.* v. *Leatherby Insurance Co.*, 714 F.2d 673, 679 (7th Cir. 1983). If anything, that principle should carry more weight when a party seeks to challenge their arbitration on unconscionability grounds *before* any potential bias has even materialized. *See* pp. 15-16, *supra*.

Mr. Flores next cites various authorities from other courts of appeals to show that a "wholly biased arbitration process" is unlawful. Br. 27. But as the district court explained, those cases are "inapposite" because they concerned arbitration agreements with "unfair selection procedures." S.A. 25. Those procedures were "crafted to ensure a biased decisionmaker" without providing clear notice of who the decisionmakers would be or why they might be biased. *Hooters of America, Inc.* v. *Phillips*, 173 F.3d 933, 938 (4th Cir. 1999); *see, e.g.*, *Pokorny*, 601 F.3d at 1003. By contrast, Mr. Flores agreed on multiple occasions with different teams over his lengthy career to arbitrate his claims "knowing full well" the NFL Commissioner's specific authority to oversee the arbitration. *See NFL Management Council*, 820 F.3d at 548. The handful of cases from state courts cited by Mr. Flores do not move the needle either; as the district court noted, those cases are "not controlling" here, S.A. 25 n.25, and their reasoning conflicts with decisions from this Court and others nation-wide. *See* pp. 20-22, *supra*.

Finally on this point, Mr. Flores includes passing criticisms of the arbitration procedures themselves. *See* Br. 2, 11, 14, 25. Because Mr. Flores raises

those arguments in only a "perfunctory manner," the Court should treat them as forfeited. *Tripathy* v. *McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) (citation omitted). In any event, Mr. Flores is incorrect that the arbitrations will lack any procedural rules. The NFL's Dispute Resolution Procedural Guidelines set forth detailed rules for arbitrations. *See* J.A. 1196-1200. Those guidelines reflect the League's policy, as established by the Commissioner through his authority under the NFL Constitution, and apply to this arbitration. *See* J.A. 604; p. 15, *supra*. And having agreed to arbitration, Mr. Flores "must be content with its informalities" and has no basis to complain about procedures that "it is precisely its purpose to avoid." *American Almond Product*, 144 F.2d at 451; *see, e.g.*, *Coinbase*, 599 U.S. at 743.

### 2. *The Arbitration Provisions In The NFL Constitution Do Not Violate The Effective-Vindication Doctrine*

Mr. Flores next argues that the failure to "provide for an impartial decisionmaker" prevents the effective vindication of his federal statutory claims. Br. 37. As an initial matter, that argument is unavailing for the same reasons as his unconscionability challenge, because both depend on the same assertions of arbitrator bias. The argument also fails because the effective-vindication doctrine concerns "a party's *right to pursue* statutory remedies." *American Express Co.* v. *Italian Colors Restaurant*, 570 U.S. 228, 235 (2013) (internal quotation marks and citation omitted). The Supreme Court has recognized only two contexts in which the doctrine might apply, neither of which applies

here: first, when an arbitration agreement forbids "the assertion of certain statutory rights," and second, when it imposes arbitration fees "so high as to make access to the forum impracticable." *Id.* at 236; *see* S.A. 24. Allegations of bias fall into neither context, and the Supreme Court has repeatedly declined to expand the doctrine beyond its existing limits. *See Italian Colors*, 570 U.S. at 235-236; *id.* at 242 (Kagan, J. dissenting).

Mr. Flores's cases (Br. 37-39) do not support a different conclusion. Most of those cases do not address the issue of alleged arbitrator bias. *See Cedeno* v. *Sasson*, 100 F.4th 386, 395-396, 400 (2d Cir. 2024); *Harrison* v. *Envision Management Holding, Inc., Board of Directors*, 59 F.4th 1090, 1098, 1100-1101 (10th Cir. 2023); *Williams* v. *Cigna Financial Advisors Inc.*, 197 F.3d 752, 763-764 (5th Cir. 1999); *Cruz* v. *AerSale, Inc.*, Civ. No. 22-857, 2024 WL 22092, at *5-*9 (D.N.M. Jan 1., 2024); *Reyes* v. *Gracefully, Inc.*, Civ. No. 17-9328, 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018). Others noted that the agreements at issue provided for neutral arbitrators, and to the extent they discussed the question more broadly, they predate the Supreme Court's clarification in *Italian Colors* that the effective-vindication doctrine concerns only the right to pursue statutory claims. *See Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-31 (1991); *Cole* v. *Burns International Security Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997); *Armendariz* v. *Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 102-103 (Cal. 2000); *see also*

S.A. 24 n.22. Finally, Mr. Flores's only case to uphold an effective-vindication claim based on bias also predates *Italian Colors* and analyzed the issue in the distinct context of an arbitration agreement that used unfair selection procedures as explained above. *See Walker* v. *Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 386-388 (6th Cir. 2005); p. 22, *supra*.

### 3. *Severance Would Be The Appropriate Remedy For The Asserted Defects*

Mr. Flores has failed to show that the arbitration provisions in the NFL Constitution are unconscionable or violate the effective-vindication doctrine. But even if some aspect of those provisions were objectionable, the proper remedy would be to sever the offending provision. Both employment agreements contain severability clauses and are governed by state laws that favor severance over wholesale invalidation. *See* Br. of Appellants 35; J.A. 1269; *Spinetti* v. *Service Corp. International*, 324 F.3d 212, 219-220 (3d Cir. 2003).

Mr. Flores contends, without elaboration, that there is "no possible contractual basis" for severing the provision of the NFL Constitution designating the Commissioner as the default arbitrator—apparently, on the theory that the severability clauses in his employment agreements allow severance only of provisions expressly set forth in the pages of those agreements. Br. 48. But the doctrine of incorporation by reference allows contracting parties to have "one document's provision read into a separate document," 11 Richard A. Lord, *Williston on Contracts* § 30:25, at 296 (4th ed. 2012), making "a

secondary document part of [the] primary document," *Black's Law Diction-
ary* 916. Mr. Flores does not dispute that his employment agreements incor-
porated the NFL Constitution by reference. *See* Br. of Appellants 10-11, 25-
26. Accordingly, the provision of the NFL Constitution designating the Com-
missioner as the default arbitrator *was* a provision of his employment agree-
ments and thus can be severed for purposes of enforcement of those agree-
ments in this case.

Mr. Flores also argues that it would be "functionally impossible" to sever
that provision, because the NFL Constitution is "not a mere agreement be-
tween two parties." Br. 48 n.15. That argument is again forfeited, *see* p. 7,
*supra*, and it misunderstands how severability works. When a court severs a
legal provision, it does not "erase" the provision "in all contexts"; it merely
refuses to enforce the provision in the specific case at hand. *Jacobson* v. *Flor-
ida Secretary of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (citation omitted);
*see also Tara Gold Resource Corp.* v. *SEC*, 678 F.3d 557, 560 (7th Cir. 2012).
If this Court severs the provision designating the Commissioner as the default
arbitrator, that decision will have no formal effect beyond this case.

## C. The Arbitration Provisions In The Steelers Agreement Apply To Mr. Flores's Claims

As another alternative ground for affirmance, Mr. Flores argues (Br.
55-57) that the arbitration provisions in his employment agreement with the
Steelers do not apply to his claims because those claims arose before he

entered into that agreement. The Court should decline to address that issue in the first instance, *see* pp. 15-16, and the argument lacks merit in any event.

Under Pennsylvania law, a broad arbitration provision with "no temporal limit" encompasses claims that arose before the agreement's effective date. *See, e.g.*, *Masoner* v. *Education Management Corp.*, 18 F. Supp. 3d 652, 661 (W.D. Pa. 2014); *see also Borough of Ambridge Water Authority* v. *Columbia*, 328 A.2d 498, 501-502 (Pa. 1974) (holding that an arbitration provision that used the "broadest conceivable language" indicated that "the parties intended the scope of the submission to be unlimited"); *TradeComet.com LLC* v. *Google, Inc.*, 435 Fed. Appx. 31, 34-35 (2d Cir. 2011) (citing cases from other jurisdictions). The presumption in favor of arbitrability under the Federal Arbitration Act reinforces that conclusion, making clear that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock Co.* v. *International Brotherhood of Teamsters*, 561 U.S. 287, 298 (2010) (citation omitted). Because the arbitration provisions in the NFL Constitution are broad and contain no temporal limitation, *see* J.A. 603, they cover claims that arose before Mr. Flores agreed to them by signing the Steelers agreement.

The authorities cited by Mr. Flores (Br. 55-56) are not to the contrary. In *Russell* v. *Citigroup, Inc.*, 748 F.3d 677 (2014), the Sixth Circuit refused to compel arbitration of a preexisting lawsuit based on the language and

circumstances of the specific agreement at issue, including the use of the "present tense" verb "arise" and other "context" surrounding the arbitration provision. *Id.* at 679-681. In *Klay* v. *All Defendants*, 389 F.3d 1191 (2004), the district court had interpreted the particular arbitration agreement at issue not to cover preexisting disputes (while noting it was a "close call"), and the Eleventh Circuit affirmed, reasoning that its precedent "did not categorically command the arbitration of claims arising from disputes outside of the effective dates of arbitration agreements." *Id.* at 1203; *see In re Managed Care Litigation*, Civ. No. 00-1334, 2003 WL 22410373, at *11 (S.D. Fla. Sept 15, 2003). Finally, in *Gair* v. *Great Star Tools USA, Inc.*, Civ. No. 21-976, 2024 WL 711612 (M.D. Pa. Feb. 21, 2024), the district court emphasized that broad arbitration provisions with "no temporal limitations" can "easily" apply to preexisting lawsuits but construed the provisions before it more narrowly, reasoning that other language in the agreement "unambiguously demonstrate[d]" that the arbitration provisions should not apply retroactively. *Id.* at *5. By contrast to those cases, the arbitration provisions in the NFL Constitution are broad enough to cover preexisting claims; by their terms, they cover "any dispute involving two or more members of the League" and "any dispute between any player, coach, and/or other employee of any member of the League (or any combination thereof) and any member club or clubs." J.A. 603.

28

Mr. Flores also cites (Br. 56) two cases in which a court concluded that applying an arbitration provision to a preexisting lawsuit is unconscionable. But even assuming those cases are correct, they involved plaintiffs who signed arbitration agreements after defendants failed to notify them of the existence of the litigation. *See In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 251-252 (S.D.N.Y. 2005); *Weinstein* v. *Jenny Craig Operations, Inc.*, No. 105520/11, 2014 WL 10680367, at *1-*2 (N.Y. Sup. Ct. Sept. 8, 2014). Those decisions offer no guidance here, because Mr. Flores entered the Steelers agreement with full knowledge of his pending lawsuit.

Finally, Mr. Flores points to an e-mail from the general manager of the Steelers sending a copy of the employment agreement to counsel for Mr. Flores and stating that the agreement "is not intended to infringe in any way on the lawsuit filed by Coach Flores" or his "right to prosecute" it. J.A. 1135. Such extrinsic evidence cannot override the explicit terms of the agreement, however, given that the agreement has an integration clause and explains that it cannot be amended "except by a writing signed by both parties." J.A. 1216-1217; *see Yocca* v. *Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-438 (Pa. 2004). In any event, requiring the arbitration of Mr. Flores's claims would not "infringe upon" his ability to prosecute his case. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum." *Preston* v.

*Ferrer*, 552 U.S. 346, 359 (2008) (citation and alteration omitted). That explains why the e-mail at issue also preserved *defendants'* right to "assert[] any defense[]" to the lawsuit, J.A. 1135, which includes "the defense of arbitration," *PPG Industries, Inc.* v. *Webster Auto Parts, Inc.*, 128 F.3d 103, 109 (2d Cir. 1997).

*     *     *     *     *

The district court's order denying in part appellants' motion to compel arbitration, and its order denying appellants' motion for reconsideration, should be vacated in relevant part, and the case remanded for Mr. Flores's claims to be sent to arbitration.

Respectfully submitted,

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

LORETTA E. LYNCH
BRAD S. KARP
LYNN B. BAYARD
BRETTE TANNENBAUM
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

AUGUST 30, 2024

31

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, counsel for appellants and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 32.1(a)(4), that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 6,987 words.

AUGUST 30, 2024

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM