# 23-1185-cv

## United States Court of Appeals
### *for the*
## Second Circuit

---

BRIAN FLORES, as a Class Representative, on behalf of himself and all others similarly situated,

*Plaintiff-Appellee,*

STEVE WILKS, RAY HORTON,

*Plaintiffs,*

— v. —

NEW YORK FOOTBALL GIANTS, INC., HOUSTON NFL HOLDINGS, L.P., DBA Houston Texans, DENVER BRONCOS, NATIONAL FOOTBALL LEAGUE,

*Defendants-Appellants,*

JOHN DOE TEAMS 1 THROUGH 29, JOHN DOE TEAMS 1 THROUGH 26, MIAMI DOLPHINS, LTD., ARIZONA CARDINALS FOOTBALL CLUB LLC, DBA Arizona Cardinals, TENNESSEE TITANS ENTERTAINMENT, INC., DBA Tennessee Titans,

*Defendants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE

---

JOHN ELEFTERAKIS
ELEFTERAKIS, ELEFTERAKIS & PANEK
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116

DOUGLAS H. WIGDOR
DAVID E. GOTTLIEB
MICHAEL J. WILLEMIN
WIGDOR LLP
85 Fifth Avenue, 5th Floor
New York, New York 10003
(212) 257-6800

*Attorneys for Plaintiff-Appellee*

---

CP COUNSEL PRESS   (800) 4-APPEAL • (332875)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ..................................................................1

COUNTER-STATEMENT OF THE ISSUES PRESENTED ...................3

COUNTER-STATEMENT OF THE CASE ..............................................6

I.      BACKGROUND ...............................................................................6

II.     SUMMARY OF CLAIMS AND PROCEDURAL HISTORY ......8

SUMMARY OF THE ARGUMENT .......................................................14

STANDARD OF REVIEW .....................................................................18

ARGUMENT ...........................................................................................19

I.      THE DISTRICT COURT'S ORDER MAY BE AFFIRMED ON
        ALTERNATIVE GROUNDS SUPPORTED IN THE RECORD...............19

II.     THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED
        ON THE ALTERNATIVE GROUNDS THAT THE
        ARBITRATION AGREEMENT IS UNCONSCIONABLE AND
        PRECLUDES EFFECTIVE VINDICATION OF STATUTORY
        RIGHTS .........................................................................................19

        A.      The District Court Should Have Held that the Arbitration
                Agreements at Issue Are Unconscionable...........................19

        B.      The District Court Should Have Held that Arbitration
                Agreement Precludes Effective Vindication of Statutory
                Rights..................................................................................36

III.    THE DISTRICT COURT CORRECTLY HELD THAT THE
        ARBITRATION PROVISION OF THE NFL CONSTITUTION
        INCORPORATED BY REFERENCE INTO THE FLORES-
        PATRIOTS CONTRACT IS UNENFORCEABLE ....................40

        A.      The District Court Correctly Held that the Arbitration
                Provision of the NFL Constitution is Illusory under
                Massachusetts Law..............................................................40

i

B.      The District Court Correctly Held that the Unilateral
        Modification Provision Was Not Severable.........................................45

IV.     THE DISTRICT COURT CORRECTLY HELD THAT
        DEFENDANTS COULD NOT COMPEL ARBITRATION
        UNDER THE FLORES-STEELERS CONTRACT ....................................50

        A.      The District Court Correctly Held that the NFL Could Not
                Belatedly Rely on New Documents on Reconsideration...................50

        B.      The District Court Correctly Held that the Commissioner's
                Approval Was a Condition Precedent to Contractual
                Obligations ..........................................................................................54

        C.      As Further Alternative Grounds, the Arbitration Agreement
                Incorporated into the Flores-Steelers Contract Is Not
                Retroactive to Past and/or Pending Claims.........................................56

        CONCLUSION .....................................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Am. Fam. Life Assurance Co. of New York v. Baker,
848 F. App'x 11 (2d Cir. 2021)...............................................................47

American Exp. Co. v. Italian Colors Rest.,
570 U.S. 228, (2013) ..................................................................36, 38

Armendariz v. Found. Health Psychcare Servs., Inc.,
24 Cal. 4th 83 (Cal. 2000) ...................................................................38

Basulto v. Hialeah Auto.,
141 So. 3d 1145 (Fla. 2014) ...............................................................22

Boro Const., Inc. v. Ridley Sch. Dist.,
992 A.2d 208 (Pa. Commw. Ct. 2010) ...............................................54

Bulwer v. Mt. Auburn Hospital,
46 N.E.3d 24 (Mass. 2013)...................................................................44

Cadrin v. New England Tel. & Tel. Co.,
828 F. Supp. 120 (D. Mass. 1993).......................................................43

Catzin v. Thank You & Good Luck Corp.,
899 F. 3d 77 (2d Cir. 2018)...................................................................53

Cedeno v. Sasson,
100 F. 4th 386 (2d Cir. 2014) ...............................................................39

Cole v. Burns Intern. Sec. Services,
105 F. 3d 1465 (D.C. Cir. 1997) ...........................................................37

Cross & Brown Co. v. Nelson,
4 A.D.2d 501 (1st Dep't 1957) ............................................................32

Cruz v. AerSale, Inc.,
No. 22 Civ. 857 (GJF (KRS), 2024 WL 22092 (D.N.M. 2024)..........39

Curtis v. Cintas Corp.,
229 F. Supp. 3d 312 (E.D. Pa. 2017).............................................20, 21

Delta Mine Holding Co. v. AFC Coal Properties,
280 F.3d 815 (8th Cir. 2001), *cert. denied,*
537 U.S. 817, 123 S. Ct. 87, 154 L.Ed.2d 23 (2002) .........................24

Doctor's Assocs., Inc. v. Casarotto,
   517 U.S. 681 (1996) ........................................................................20

Domenichetti v. The Salter School, LLC,
   No. 12 Civ. 11311 (FDS), 2013 WL 1748402 (D. Mass. April 19, 2013) ..........43

Douglas v. Johnson Real Estate Investors, LLC,
   470 Fed. Appx. 823 (11th Cir. 2012)...................................................43

Dumitru v. Princess Cruise Lines, Ltd.,
   732 F. Supp. 2d 328 (S.D.N.Y. 2010)..................................................47

Ethridge v. Bell,
   49 F.4th 674 (2d Cir. 2022) ...........................................................53

Fawcett v. Citizens Bank, N.A.,
   297 F. Supp. 3d 213 (D. Mass. 2018)..................................................43

Floss v. Ryan's Family Steak Houses, Inc.,
   211 F. 3d 306 (6th Cir. 2000)..........................................................29

Gair v. Great Star Tools USA, Inc.,
   No. 4:21 Civ. 00976, 2024 WL 711612 (M.D. Pa. Feb. 21, 2024) ......................56

Garcia v. Church of Scientology Flag Service Organization, Inc.,
   No. 18-13452, 2021 WL 5074465 (11th Cir. Nov. 2, 2021) ...............................34

Garcia v. Steele,
   211 N.E.3d 602 (Mass. 2023)..........................................................44

Gilbert v. Dell Technologies, Inc.,
   415 F. Supp. 3d 389 (S.D.N.Y. 2019)..................................................46

Gilmer v. Interstate/Johnson Lane Corp.,
   500 U.S. 20 (1991) ...................................................................20, 37

Graham v. Scissor-Tail, Inc.,
   28 Cal. 3d 807 (Ca. 1981) ............................................................33

Graphic Art Finishers, Inc. v. Bos. Redevelopment Auth.,
   255 N.E.2d 793 (Mass. 1970)..........................................................45

Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors,
   59 F.4th 1090 (10th Cir. 2023) .......................................................38, 39

Headley v. Tilghman,
   53 F.3d 472 (2d Cir. 1995).............................................................19

Hooters of America Inc. v. Phillips,
　　173 F. 3d 933 (4th Cir. 1999) ....................................................27, 28, 31

Horsehead Res. Dev. Co., Inc. v. B.U.S. Envt'l Serv. Inc.,
　　928 F. Supp. 287 (S.D.N.Y. 1997)..........................................................52

In re Currency Conversion Fee Antitrust Litig.,
　　361 F. Supp.2d 237 (S.D.N.Y. 2005)......................................................56

ING Bank N.V. v. M/V TEMARA, IMO No. 9333929,
　　892 F.3d 511 (2d Cir. 2018)....................................................................53

Jackson v. Action for Boston Comm. Development, Inc.,
　　525 N.E. 2d 411 (Mass. 1988)................................................................41

Joule, Inc. v. Simmons,
　　2011 WL 7090714 (Mass. Sup. Ct. Dec. 5, 2011)................................46

Kahn v. New York Univ. Med. Ctr.,
　　328 F. App'x 758 (2d Cir. 2009) ............................................................19

Klay v. All Defendants,
　　389 F.3d 1191 (11th Cir. 2004)..............................................................56

Kopperl v. Bain,
　　No. 3:09 Civ. 01754 (CSH), 2016 WL 310719 (D. Conn. Jan. 26, 2016) ...........51

Korea Wk., Inc. v. Got Cap., LLC,
　　No. 15 Civ. 6351, 2016 WL 3049490 (E.D. Pa. May 27, 2016) ...........................21

Kutluca v. PQ New York Inc.,
　　266 F. Supp. 3d 691 (S.D.N.Y. 2017)....................................................50

Machado v. System4 LLC,
　　28 N.E.3d 401 (2015) ............................................................................49

Machado v. System4 LLC,
　　465 Mass. 508 (Mass. 2013) ................................................................47

Machado v. System4 LLC,
　　471 Mass. 204 (Mass. 2015) ........................................................20, 21

McMullen v. Meijer, Inc.,
　　355 F.3d 485 (6th Cir. 2004) .......................................................27, 28, 29

McNamara v. S.I. Logistics, Inc.,
　　No. 17 Civ. 12523 (ADB), 2018 WL 6573125 (D. Mass. Dec. 13, 2018)...........43

v

Meyer v. Uber Techs., Inc.,
    868 F.3d 66 (2d Cir. 2017) .................................................................................18

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ....................................................................................4, 36

Nat'l Football League Mgmt. Council v.
    Nat'l Football League Players Ass'n,
    820 F.3d 527 (2d Cir. 2016) ......................................................................*passim*

Nat'l Football League v. Gruden,
    548 P.3d 775 (Nev. 2024) .................................................................................33

National Fed. Of the Blind v. The Container Store, Inc.,
    No. 15 Civ. 12984 (NMG), 2016 WL 4027711(D. Mass. July 27, 2016) ...........43

New York Gaslight Club, Inc. v. Carey,
    447 U.S. 54 (1980) ..........................................................................................36

Nino v. Jewelry Exchange, Inc.,
    609 F. 3d 191 (3d Cir. 2010) ............................................................................35

Nostalgic Partners, LLC v. New York Yankees Partnership, et al.,
    No. 656724/2020 (BO) (N.Y. Cty. Sup. Ct. Dec. 17, 2021) ..............................32

NSTAR Electric Co.v. Dept. of Public Util.,
    968 N.E.2d 895 (Mass. 2012) ...........................................................................44

O'Brien v. New England Telephone & Telegraph Co.,
    664 N.E.2d 843 (Mass. 1996) .....................................................................41, 42

Opals on Ice Lingerie v. Bodylines Inc.,
    320 F.3d 362 (2d Cir. 2003).............................................................................20

Pearson v. John Hancock Mut. Life Ins. Co.,
    979 F.2d 254 (1st Cir. 1992) ............................................................................42

Perez v. Ortiz,
    849 F. 2d 793 (2d Cir. 1988).............................................................................53

Poch v. Equitable Life Assur. Soc. of U.S.,
    22 A.2d 590 (Pa. 1941).....................................................................................55

Pokorny v. Quixtar, Inc.,
    601 F. 3d 987 (9th Cir. 2010) ...............................................................27, 30, 35

Porreca v. Rose,
 No. 13 Civ. 1674, 2013 WL 6498392 (E.D. Pa. Dec. 11, 2013) ................... 34-35

Rent–A–Center, West, Inc. v. Jackson,
 561 U.S. 63 (2010) ............................................................................................19

Reyes v. Gracefully, Inc.,
 No. 17-CV-9328 (VEC), 2018 WL 2209486 (S.D.N.Y. May 11, 2018) .............39

Robertson v. Enbridge (U.S.) Inc.,
 No. 2:19 Civ. 01080 (WSS), 2021 WL 3667903 (W.D. Pa. July 8, 2021)...........50

Russell v. Citigroup, Inc.,
 748 F. 3d 677 (6th Cir. 2014) ...........................................................................56

Saizhang Guan v. Uber Techs., Inc.,
 236 F. Supp. 3d 711 (E.D.N.Y. 2017)................................................................20

Schnabel v. Trilegiant Corp.,
 697 F.3d 110 (2d Cir. 2012).......................................................................... 18-19

Shotts v. OP Winter Haven, Inc.,
 86 So. 3d 456 (Fla. 2011) .................................................................................47

Snider v. Melindez,
 199 F.3d 108 (2d Cir. 1999)...............................................................................53

Space Hunters, Inc. v. United States,
 500 F. App'x 76 (2d Cir. 2012)..........................................................................50

Stancil ex rel. Gentry v. Dominion Crossville, LLC,
 2022 WL 3010499 (Tenn. Ct. App. July 29, 2022) ............................................22

State ex rel. Hewitt v. Kerr,
 461 S.W.3d 798 (Mo. 2015) ..............................................................................32

Stirlen v. Supercuts, Inc.,
 51 Cal. App. 4th 1519 (1st Dist. Ct. 2d Div. 1997).............................................35

Storie v. Household Int'l, Inc.,
 No. 03 Civ. 40268 (FDS), 2005 WL 3728718 (D. Mass. Sept. 22, 2005) ..........21

Tr. Under Deed of Wallace F. Ott,
 2021 PA Super 203, 271 A.3d 409 (2021)...........................................................55

Trotter v. National Football League, et al.,
 23 Civ. 08055 ......................................................................................................7

United States v. Posada,
    206 F.Supp.3d 866 (S.D.N.Y. 2016) ..................................................51

Universal Builders, Inc. v. Moon Motor Lodge, Inc.,
    430 Pa. 550, 244 A.2d 10 (Pa. 1968) ................................................55

Walker v. Ryan's Family Steak Houses, Inc.,
    400 F.3d 370 (6th Cir. 2005) ..........................................27, 29, 30, 37

Weinstein v. Jenny Craig Op., Inc.,
    No. 105520/11, 2014 WL 10680367 (N.Y. Cty. Sup. Ct. Sep. 08, 2014) ...........57

Wells Fargo Advisors, LLC v. Sappington,
    884 F.3d 392 (2d Cir. 2018)................................................................19

Williams v. Cigna Fin. Advisors Inc.,
    197 F.3d 752 (5th Cir. 1999) ............................................................37

Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC,
    No. 3:15 Civ. 911 (VLB), 2017 WL 945019 (D. Conn. Mar. 9, 2017) .......... 52-53

Winfrey v. Simmons Foods, Inc.,
    495 F.3d 549 (8th Cir. 2007) ......................................................23, 24

Woebse v. Health Care and Retirement Corp. of America,
    977 So. 2d 630 (Fla. Dist. Ct. App. 2008)..........................................35

**Statutes & Other Authorities:**

U.S. Const., amend. I ................................................................34

9 U.S.C.A. § 2 ...................................................................20, 23

9 U.S.C. § 10(a)(2)..............................................................23, 24, 34

42 U.S.C. § 1981 ......................................................................8

## PRELIMINARY STATEMENT

The district court correctly denied Defendants' motion to compel arbitration as to Plaintiff Brian Flores' claims against the Denver Broncos ("Broncos"), New York Giants ("Giants"), Houston Texans ("Texans") and related claims against the National Football League ("NFL"). While the district court's conclusion was sound and should be affirmed, affirmance should also rest on alternative grounds. Respectfully, the arbitration agreement Defendants seek to enforce is so highly oppressive that this Court should first and foremost affirm on the grounds that it is unconscionable and constitutes a subversion of Congressional intent.

Specifically, Defendants seek to enforce an arbitration agreement in the NFL Constitution that would place the NFL Commissioner—Roger Goodell—as the arbitrator of Mr. Flores' statutory class action discrimination claims against the business entities he is handsomely paid to protect. To say Mr. Goodell is biased would be an understatement as: he is professionally and financially beholden to the NFL and its teams, he enjoys his job as NFL Commissioner—the pinnacle of power and prestige—at the leisure of NFL team owners, he is personally represented by the same attorneys representing Defendants, and he is paid tens of millions of dollars annually to act in their best interest. Case in point, in the days after this lawsuit was filed, Mr. Goodell's office issued a public response demonstrating its clear bias that the claims are "without merit." Moreover, the

arbitration agreement is also unconscionable because it can be unilaterally amended without notice, does not provide for any arbitrator disclosures regarding bias or conflicts, does not provide for any entitlement to discovery, does not provide any rules of procedure, and does not even require that the Commissioner preside over arbitral proceedings in an impartial manner. If Mr. Flores must pursue his discrimination claims against the NFL with Mr. Goodell as arbitrator, his rights under the anti-discrimination laws effectively cease to exist.

In addition to these important alternative grounds for affirmance, the district court's rationales should also be affirmed. The district court correctly held that, under controlling Massachusetts case law, the arbitration agreement incorporated into Mr. Flores' contract with the New England Patriots ("Flores-Patriots Contract") was illusory because, *inter alia*, it could be unilaterally modified without notice. Massachusetts courts confirm that unless appropriate "special attention" is given to employer handbook and policy documents—such as providing the document to the employee, asking the employee to sign the document, giving notice of changes, giving the employee the ability to negotiate the documents, and the like—those documents cannot constitute enforceable contracts. None of the factors considered by Massachusetts courts when determining such documents constitute a contract exist with respect to the NFL Constitution. There is also no basis, as the district court concluded, to sever any

portion of the NFL Constitution, or, as Defendants requested for the first time in their reconsideration reply papers, engage in line-item redlining of the contract.

The district court also correctly rejected Defendants' attempt to use Mr. Flores' contract with the Pittsburgh Steelers ("Flores-Steelers Contract") to compel arbitration—entered into after this lawsuit was filed—because Defendants failed to provide the contract with all completed conditions precedent (i.e. Mr. Goodell's approval) when they filed their moving papers, or at any point during the eight months before the district court issued its decision. Defendants' belated attempt to introduce new evidence at the reconsideration stage was appropriately rejected and should be affirmed as improper on appeal. Even if the Court were to consider the completed Flores-Steelers Contract (or remand to the district court for consideration), it would be futile because the Steelers expressly agreed, in writing, not to use the contract to infringe on Mr. Flores' pending claims in this lawsuit.

For these reasons, and others argued in detail herein, the district court's order should be affirmed.

## <u>COUNTER-STATEMENT OF THE ISSUES PRESENTED</u>

1. Whether the district court erred in finding that a party cannot challenge the bias and lack of neutrality of an arbitration process under the doctrine of unconscionability, effectively rendering the doctrine of unconscionability inapplicable to arbitration agreements, based on a misapplication of the

phrase "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen" from <u>Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n</u>, 820 F.3d 527, 548 (2d Cir. 2016).

2. Whether the district court erred in failing to hold that an arbitration agreement is unenforceable under the doctrine of unconscionability where it fails to provide for an unbiased forum and/or arbitrator to resolve statutory discrimination claims and fails to provide for procedural safeguards.

3. Whether the district court erred in failing to hold that an arbitration agreement is unenforceable under the "effective vindication" doctrine, <u>see</u> <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 637 (1985), where it fails to provide for an unbiased forum and/or arbitrator to resolve statutory discrimination claims.

4. Whether the district court correctly held that the arbitration provision of the NFL Constitution, incorporated into the Flores-Patriots Contract, which can be unilaterally modified without notice, is illusory and unenforceable under Massachusetts law.

5. Whether the district court correctly held that the unilateral modification provision of the NFL Constitution, incorporated into the Flores-Patriots Contract, cannot not be severed from the remainder of the contract.

6.  Whether the district court correctly held that the phrase "amended from time to time hereafter" contained within a larger provision of the Flores-Patriots Contract cannot be severed.

7.  Whether the district court correctly held that Defendants were not permitted to rely on and submit a new version of the Flores-Steelers Contract at the motion for reconsideration stage, when Defendants were in possession of that document when the motion to compel arbitration was filed and could have submitted it to the district court at any time in the eight months before the March 1, 2023 Order was issued.

8.  Whether the district court correctly held that the Flores-Steelers Contract relied upon by Defendants failed to establish a condition precedent to the mutual contractual obligations, including the arbitration agreement.

9.  Whether the district court erred in refusing to consider that any arbitration agreement incorporated into the Flores-Steelers was not intended to be and was not retroactive to cover past and/or pending claims.

10. Whether the district court erred in refusing to consider that any arbitration agreement incorporated into the Flores-Steelers is unenforceable as to this lawsuit because the parties expressly agreed in writing that the "employment agreement is not intended to infringe in any way on the lawsuit filed by Coach Flores in February 2022, which is currently pending."

## COUNTER-STATEMENT OF THE CASE

## I.    BACKGROUND

Throughout its history, the NFL has dealt with systemic race discrimination in the treatment of NFL coaches.  JA-82-156.  Together, Plaintiffs Brian Flores, Steve Wilks and Ray Horton—all of whom are current and/or former NFL coaches—asserted claims against the NFL teams which directly employed them (Mr. Flores asserted claims against the Denver Broncos, Miami Dolphins ("Dolphins"), New York Giants and Houston Texans; Mr. Wilks asserted claims against the Arizona Cardinals ("Cardinals"); Mr. Horton asserted claims against the Tennessee Titans ("Titans")) and the NFL, alleging that they—and other similarly situated individuals—were subjected to similar forms race discrimination and/or retaliation.  Id.  Plaintiffs also asserted that the NFL's policies and practices have had a discriminatory impact on Black coaches and executives.  JA-108-25.

The NFL claims that "[d]iversity, equity, and inclusion are core NFL values," but Plaintiffs' experiences and NFL history shows otherwise.  Racial re-integration did not happen until approximately 1946.  Even then, racial re-integration was slow and prodding—it took 20 years for the first Black official to be hired; 40 years for Black quarterbacks to be generally accepted; 43 years for a Black head coach to be hired; 54 years for a Black General Manager to be hired; and there still remains not a single Black majority team owner.  Even players who

have spoken up against racism face harsh and sweeping retaliation—including Colin Kaepernick who was blackballed from the league for speaking out about societal racism.  NFL insiders, such as Coach Jon Gruden, openly use racial epithets and slurs.  JA-94-108.  More recently, the NFL fired a reporter who publicly challenged Mr. Goodell about the NFL's record on hiring, retaining and promoting Black employees in the NFL's media group.  See Trotter v. National Football League, et al., 23 Civ. 08055.

The NFL's race problem has notoriously manifested itself in the lack of meaningful opportunities for Black coaches.  By the end of the 2002 season, the NFL had only three Black head coaches out of 32 teams.  In the face of substantial public pressure, the NFL then adopted a controversial measure—known as the "Rooney Rule"—which forces teams to at least consider minority candidates for head coaching jobs.  However, 20 years later, when this lawsuit was filed, there was only one Black head coach.  Moreover, Black candidates who have overcome the odds and obtained coaching jobs have been given limited opportunities to succeed compared to their white counterparts.   JA-109-25.

The NFL has acknowledged this problem.  In the weeks before this action was filed, the NFL's Executive Vice President of Football Operations, publicly stated that for Black candidates, "there is a double standard.  I don't think that that is something that we should shy away from.  But that is all part of some of the

things that we need to fix in the system." JA-84. However, within hours after this action was filed, and without having conducted any analysis or investigation, the NFL issued a blanket statement that the allegations are "without merit." JA-107. That statement demonstrated an institutional rejection that the NFL will not even consider the merits of this matter.

## II.    <u>SUMMARY OF CLAIMS AND PROCEDURAL HISTORY</u>

On February 1, 2022, Mr. Flores commenced this putative class action against the NFL, Broncos, Dolphins, and Giants alleging claims of race discrimination and retaliation. JA-24. On April 7, 2022, Mr. Flores, joined by Mr. Wilks and Mr. Horton, filed an Amended Complaint, including additional claims by Mr. Flores against the Texans, by Mr. Wilks against the Cardinals and by Mr. Horton against the Titans. JA-82. Together, Plaintiffs asserted claims under 42 U.S.C. §1981 and state and local anti-discrimination laws.

Relevant on appeal,[1] Mr. Flores alleges he was subjected to a sham interview and not hired for a head coaching position on the basis of his race by the Broncos, subjected to a sham interview and not hired for a head coaching position on the basis of his race by the Giants, and retaliated against by the Texans when he was removed for consideration for a head coach job after filing this lawsuit. JA-129-

---

[1]     Mr. Flores' claims against the Dolphins, Mr. Wilks' claims against the Cardinals and Mr. Horton's claims against the Titans were all compelled to arbitration. SA-29. As such, relevant here are Mr. Flores' claims against the Broncos, Giants and Texans.

38.  Mr. Flores did not enter into any agreements or contracts—including no arbitration agreement—with any of these organizations.

On June 21, 2022, Defendants moved to compel arbitration of all the claims by all Plaintiffs.[2]  Relevant here, Defendants argued that Mr. Flores' claims against the Broncos are subject to arbitration because while he interviewed for that position, he was under a contract with another team—the Patriots—which incorporated-by-reference the NFL Constitution containing an arbitration agreement.  JA-209-11.

The NFL further contended that Mr. Flores' claims against the Giants and Texans are subject to arbitration on the basis of an employment contract Mr. Flores entered into with the Pittsburgh Steelers *after* this lawsuit was filed, which also incorporated the NFL Constitution.  JA-209.  However, Defendants failed to submit a complete copy of the Flores-Steelers Contract including Mr. Goodell's signature, which was a condition precedent to the contract's mutual obligations.  JA-217-24, 1178-83.  More than seven months after Defendants filed their moving papers, and after the motion was fully briefed, the district court ordered Defendants to submit complete copies of all applicable contracts.  JA-486-87.  In response,

---

[2]      In response to Defendants' motion, Plaintiffs moved for discovery related to Mr. Goodell's bias to be considered in connection with the motion.  JA-182-83, 225-54, 255-60.  The district court denied Plaintiffs' request.  JA-261-69.

Defendants *again* failed to submit a complete version of the contract.  JA-515-22, 1210-17.

Plaintiffs opposed Defendants' motion to compel arbitration.  Relevant here, Mr. Flores argued, first and foremost, that the arbitration provision of the NFL Constitution ("Section 8.3") was unconscionable and precluded effective vindication of statutory anti-discrimination rights.  JA-279-91.  Although not quoted in Defendants' appellate brief, Section 8.3 states only the following: "The Commissioner shall have full, complete and final jurisdiction and authority to arbitrate: [listing categories of disputes]."[3]  JA-603.  That is its entirety.

Mr. Flores argued that the arbitration agreement is substantively unconscionable primarily because it designates a completely biased and partial arbitrator—Mr. Goodell.  Mr. Goodell has financial and professional incentives to act in the NFL's interest that are so overwhelming that no reasonable person could consider him impartial.  Mr. Goodell is the chief executive officer of the NFL, and it is his job is to act in the NFL and teams' best interest; he works for and reports to the team owners and serves completely at their leisure; he is reportedly paid more than $60 million per year by the NFL; and, he will likely be a witness in this litigation given his key policy making role.  Moreover, Mr. Goodell's league office

---

[3]  Notably, Section 8.3 does not permit Mr. Goodell to delegate his arbitral authority.  JA-603.  This is different than the NFL's Dispute Resolution Procedural Guidelines, which are incorporated into other contracts that are not applicable on this appeal.  JA-489-505, 1184-1200.

issued a statement immediately after this lawsuit was filed which announced that the claims are "without merit." Mr. Flores argued that this unconscionability is compounded by the fact that Section 8.3 can be unilaterally modified without notice, does not provide for any arbitrator disclosures regarding bias or conflicts, does not provide for any entitlement to discovery, does not provide any rules of procedure, does not require the Commissioner preside over arbitral proceedings in an impartial manner, and does not even prohibit the teams from retaliating against the Commissioner based on his arbitral decisions. JA-279-91, 603-04.

Mr. Flores argued that, while under many state laws egregious substantive unconscionability is alone sufficient to invalidate a contract, procedural unconscionability was also present. Specifically, Mr. Flores argued that the NFL Constitution was not provided to him or attached to his employment contracts, that no instructions were provided on where to access the document, that he had no ability to negotiate its terms, and that he was in a uniquely take-it-or-leave-it posture given that the NFL is a virtual monopoly with few head coaching jobs available each year. JA-283, 1184-1262.

For many of the same reasons, Mr. Flores argued that enforcement of the arbitration agreement was unenforceable under Supreme Court precedent because it would preclude effective vindication of his rights under the anti-discrimination laws and would undermine Congressional intent. JA-289-91.

11

Separate and apart from unconscionability and effective vindication, as to Mr. Flores' contract with the Steelers, Mr. Flores argued that it was unenforceable as to his pre-existing claims because any incorporated arbitration agreement was not retroactive to pending class action claims. JA-293-94, 603, 1178-83.

On February 1, 2023, the district court ordered Defendants to submit complete versions of all the contracts previously filed. On February 3, 2023, Defendants filed the requested documents that it was relying upon. JA-486-570.

On March 1, 2023, the district court partially granted Defendants' motion but denied the aspects at issue on this appeal ("March 1, 2023 Order"). Specifically, the district court held that Section 8.3 was illusory because it could be unilaterally modified without any notice—as such, Mr. Flores' claims against the Broncos would not be subject to arbitration. As to the Flores-Steelers Contract, the district court held that, despite being given multiple opportunities, Defendants had not presented evidence that a condition precedent to its enforceability had been shown; namely, that it had been signed by Mr. Goodell—as such, Mr. Flores' claims against the Giants and Texans would not be subject to arbitration. SA-13-14, 21-22.

On March 15, 2023, Defendants moved for reconsideration. JA-1043-67. After full briefing, on July 25, 2023, the district court denied that motion ("Reconsideration Order"). SA-31-47.

Defendants argued in their moving papers that the district court incorrectly determined that the unilateral modification provision of the NFL Constitution created an illusory contract, or, in the alternative, that it could be severed—both arguments were correctly rejected by the district court.  JA-1053-59.

As to the Flores-Steelers Contract, Defendants argued that Mr. Goodell had, in fact, executed the contract and asked for leniency in failing to previously provide the executed document.  Defendants even acknowledged that they were in possession of a fully executed contract when the motion to compel arbitration was filed but did not provide it to the district court.  JA-1061-62.

In response, Mr. Flores argued that while it was improper to consider the newly submitted Flores-Steelers Contract, even if it were to do so, it was unenforceable for the further reason that the Steelers expressly disclaimed that it would be used to infringe on this pending lawsuit.  JA-1117-19.  Mr. Flores had sought such assurances from the Steelers since this lawsuit was ongoing when it was signed.  As such, the Steelers agreed:

> This employment agreement is not intended to infringe in any way on the lawsuit filed by Coach Flores in February 2022, which is currently pending. The Club and Coach Flores do not intend for anything in this employment agreement to infringe upon Coach Flores' right to prosecute the pending lawsuit, and neither does this agreement infringe upon the rights of the NFL or any party to the lawsuit in asserting any defenses in the lawsuit.

JA-1086-93, 1130-36. Notwithstanding this, the NFL argued that the Flores-Steelers Contract prevented Mr. Flores from continuing to pursue his claims in court. JA-1116-17. The district court did not address this particular argument, but correctly denied Defendants' reconsideration request on the grounds of newly submitted evidence. SA-34-36.

## SUMMARY OF THE ARGUMENT

I.      The district court correctly denied Defendants' motion to compel arbitration and request for reconsideration. The district court should be affirmed based on its relied upon rationales and upon alternative grounds.

II.      The district court erred in refusing to find that the arbitration agreement of the NFL Constitution is both unconscionable and precludes effective vindication of statutory rights.

A.      The arbitration agreement of the NFL Constitutuion is substantively unconscionable because it designates an impossibly biased individual—the NFL Commissioner—to adjudicate claims against the NFL and its member teams. The arbitration agreement is further substantively unconscionable because it can be unilaterally amended without notice, does not provide for any arbitrator disclosures regarding bias or conflicts, does not provide for any entitlement to discovery, does not provide any rules of procedure, and does not require that the Commissioner preside over arbitral proceedings in an impartial manner. The contracts are

14

procedurally unconscionable because the NFL Constitution was never provided to

Mr. Flores or attached to his employment contracts, no instructions were provided

to him on where to access the document, he had no ability to negotiate its terms,

and he was in a uniquely take-it-or-leave-it posture given that the NFL's

monopolistic nature.  For these and other reasons, the district court's reliance on

Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820

F.3d 527, 548 (2d Cir. 2016) was incorrect.

B.     The arbitration agreement of the NFL Constitution is unenforceable

because it precludes the effective vindication of federal statutory rights for many of

the same reasons that it is unconscionable.  An arbitration agreement will be

invalid if it thwarts Congressional intent and fails to provide a forum in which

statutory rights can be effectively vindicated.  Federal anti-discrimination laws

serve an important public interest which Congress intended to advance through

individuals pursuing civil actions.  Absent a fair and impartial forum, Plaintiff does

not have any legitimate ability to effectively vindicate his statutory right to be free

from discrimination.

III.    The district court correctly held that the arbitration provision of the NFL

Constitution incorporated into the Flores-Patriots Contract is illusory and not

subject to severance.

A.     Under Massachusetts law, an employee handbook or policy document, like the NFL Constitution, is not an enforceable contract unless the employer can establish that it was afforded "special attention"—with factors including whether notice must be provided before any modifications, the document was presented to the employee, the employee was asked to sign the document, the employee had the ability to negotiate the documents, etc.  Most notably, Massachusetts courts find a contract to be illusory when the employer can unilaterally modify it without notice. Such a provision creates an illusory contract because it leaves the employee bound to whatever terms the employer desires to impose at any given time.  Here, the NFL Constitution contains a no-notice unilateral modification provision, and no other "special attention" was given to the NFL Constitution or its arbitration agreement.  As such, the district court correctly held the NFL Constitution's arbitration agreement to be unenforceable under Massachusetts law.

B.     The district court correctly held that severance of either the NFL Constitution's unilateral modification provision or specific phrases embedded into the middle of sentences of the Flores-Patriots Contract is both impermissible and impractical.  The severance provision of the Flores-Patriots Contract does not permit severance of any provision of the NFL Constitution and only permits severance of "provisions" within the Flores-Patriots Contract, not deletion of phrases or words within the middle of sentences within provisions.  Even if such

deletions were otherwise permissible, the proposed phrase to be crossed-out cannot be removed because it is fully integrated into the Flores-Patriots Contract's scheme as well as that of the NFL Constitution.

IV.     The district court correctly held that Defendants failed to meet their burden to compel arbitration under the Flores-Steelers Contract because they neglected to submit the operative contract until the reconsideration phase; in the alternative, the district court should be affirmed because the arbitration agreement is not retroactive and the Steelers agreed his contract would not infringe on this lawsuit.

   A.     Defendants failed to submit a completed version of the Flores-Steelers Contract which included compliance with an express condition precedent to the mutual obligations—namely, Mr. Goodell's signature of approval.  Defendants' failure to do so was utter neglect as the document was available at the time Defendants filed their motion, and Defendants not only failed to submit it then, but failed to submit it at any point in the eight months that followed before the March 1, 2023 Order.  The district court correctly rejected Defendants request to correct their neglect and rely on new documents at the reconsideration stage.

   B.     The district court correctly held that, under the version of the Flores-Steelers Contract relied upon by Defendants, a condition precedent to the mutual obligations was Mr. Goodell's approval via signature.  Defendants incorrectly argue that the condition precedent should be overlooked because contracts can be

formed through performance rather than execution. That general proposition does not apply where an express condition precedent to contract formation exists. Moreover, conditions precedent may only be waived through express waiver or through a party's repeated failure require compliance with such condition precedent. No express or constructive waiver exists here.

C.    As further alternative grounds for affirmance, the Flores-Steelers Contract was entered into after this lawsuit was pending and there is no indication in the NFL Constitution or the contract itself that the arbitration agreement was intended to have retroactive application. To the contrary, the parties expressly agreed in writing that the Flores-Steelers Contract was "not intended to infringe in any way on the lawsuit filed by Coach Flores in February 2022." Finally, arbitration agreements that post-date the commencement of a class action are unenforceable under prevailing case law.

## STANDARD OF REVIEW

The standard of appellate review of an order denying a motion to compel arbitration is *de novo*. Meyer v. Uber Techs., Inc., 868 F.3d 66, 72 (2d Cir. 2017). "Because this appeal comes to us from the district court's denial of the defendants' motion to compel arbitration, [courts] accept as true for purposes of this appeal factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties." Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir.

2012).  The standard for appellate review of an order on a motion for

reconsideration is abuse of discretion.  Kahn v. New York Univ. Med. Ctr., 328 F.

App'x 758, 759 (2d Cir. 2009).

## ARGUMENT

## I.      THE DISTRICT COURT'S ORDER MAY BE AFFIRMED ON ALTERNATIVE GROUNDS SUPPORTED IN THE RECORD

The Second Circuit may affirm a lower court's decision on any ground

supported in the record, even if different from basis for the original order.  See e.g.

Wells Fargo Advisors, LLC v. Sappington, 884 F.3d 392, 396 n.2 (2d Cir. 2018)

("[W]e are free to affirm on any ground that finds support in the record, even if it

was not the ground upon which the trial court relied.") (quoting Headley v.

Tilghman, 53 F.3d 472, 476 (2d Cir. 1995).  Here, the district court correctly

denied Defendants' motion to compel arbitration as to Plaintiff's claims against the

Broncos, Giants and Texans.  However, as argued throughout this brief, further

alternative grounds exist for affirmance.

## II.     THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED ON THE ALTERNATIVE GROUNDS THAT THE ARBITRATION AGREEMENT IS UNCONSCIONABILE AND PRECLUDES EFFECTIVE VINDICATION OF STATUTORY RIGHTS

### A.      The District Court Should Have Held that the Arbitration Agreements at Issue Are Unconscionable

It is a "fundamental principle that arbitration is a matter of contract."  Rent–

A–Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).  The FAA does not put

arbitration agreements on a "pedestal" or give them any "special footing." <u>See</u> <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 33 (1991) (the FAA "place[d] arbitration agreements on the same footing as other contracts."). Rather, arbitration agreements are "as enforceable as other contracts, but not more so." <u>Opals on Ice Lingerie v. Bodylines Inc.</u>, 320 F.3d 362, 369 (2d Cir. 2003).

The FAA provides that arbitration agreements are not enforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. §2; <u>see</u> <u>also</u> <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996) (arbitration agreements "may be invalidated by generally applicable contract defenses, such as . . . unconscionability."). Whether an enforceable arbitration agreement exists is a question of state contract law. <u>See</u> <u>e.g.</u> <u>Saizhang Guan v. Uber Techs., Inc.</u>, 236 F. Supp. 3d 711, 729 (E.D.N.Y. 2017) (state law controls as to both the existence and enforceability of an arbitration agreement).

The arbitration agreement at issue arises from contracts formed in Massachusetts and/or Pennsylvania. JA-506-22, 1201-17. Under both state laws, a contract is unenforceable if it is both substantively and procedurally unconscionable. <u>See</u> <u>e.g.</u> <u>Machado v. System4 LLC</u>, 471 Mass. 204, 218 (Mass. 2015) (MA law); <u>Curtis v. Cintas Corp.</u>, 229 F. Supp. 3d 312, 317 (E.D. Pa. 2017) (PA law). A contract is substantively unconscionable if the "terms are oppressive to one party" and procedurally unconscionable if "the circumstances surrounding

the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise." <u>Machado</u>, 471 Mass. at 218; <u>see</u> <u>also</u> <u>Storie v. Household Int'l, Inc.</u>, No. 03 Civ. 40268 (FDS), 2005 WL 3728718, at *9 (D. Mass. Sept. 22, 2005) (MA law; also described as, a deal "such as no [person] in his [or her] senses and not under delusion would make on the one hand, and no honest and fair [person] would accept on the other."); <u>Curtis</u>, 229 F. Supp. 3d at 320 (PA law; a contract is substantively unconscionable where it "unreasonably favors the party asserting it" and procedurally unconscionable where "there was a lack of meaningful choice" or "when formed through oppression and unfair surprise."). Pennsylvania law uses a "sliding scale approach" with respect to the two prongs. See <u>e.g.</u> <u>Korea Wk., Inc. v. Got Cap., LLC</u>, No. 15 Civ. 6351, 2016 WL 3049490, at *6 (E.D. Pa. May 27, 2016).

The district court erred in failing to find the arbitration agreement substantively unconscionable due to, *inter alia*, the designation of the NFL's chief executive to arbitrate discrimination claims against the NFL and its teams. The district court incorrectly found this permissible primarily because of the following language from this Court's decision in <u>Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n</u>, 820 F.3d 527, 548 (2d Cir. 2016): "[T]he parties to an arbitration can ask for no more impartiality than inheres in the method

they have chosen."[4]  Following that language, the district court found Mr. Flores'

agreement to arbitrate disputes before the NFL Commissioner could not be

unconscionable because even if Mr. Goodell is biased, Mr. Flores knew he was

biased when the agreement was made.  SA-22-26.

The district court's reasoning was erroneous because <u>Nat'l Football League</u>

<u>Mgmt. Council</u> did not even involve application of the unconscionability doctrine,

which exists precisely to invalidate contracts where, *despite* an agreement, the

terms are oppressively unfair.  Put another way, the unconscionability doctrine

requires that a court *not enforce* and find *the absence of an agreement* when a

contractual term is unconscionable.  Respectfully, if an agreement to oppressive

terms is permissible because one cannot expect more fairness than what one agreed

to, that would completely swallow the entire doctrine of unconscionability; it

would create a rule of law that no arbitration agreement could ever be deemed

unconscionable on the basis of bias, impartiality or a lack of fairness.  That is not,

---

[4]      The March 1, 2023 Order ostensibly interpreted unconscionability under Florida and Tennessee law due to the district court's focus on the Flores-Dolphins Contract and Horton-Titans Contract, respectively.  However, the standards for unconscionability are nearly identical under state laws.  <u>See</u> <u>e.g.</u> <u>Basulto v. Hialeah Auto.</u>, 141 So. 3d 1145, 1157 (Fla. 2014) (FL law: "unreasonably favorable to the other party"); <u>Stancil ex rel. Gentry v. Dominion Crossville, LLC</u>, 2022 WL 3010499, at *5 (Tenn. Ct. App. July 29, 2022) (Tennessee law, "terms are unreasonably harsh.").  For that reason, while the district court mentioned Florida and Tennessee law (one case cited for each state law), it primarily relied on case law from the Second Circuit (applying federal law), and also relied on case law from the Fourth Circuit (applying South Carolina and federal common law) and Sixth Circuit (applying Michigan and federal common law).  SA-22-26.

and cannot, be the law.  In fact, it is the antithesis strictures of the Federal

Arbitration Act.  9 U.S.C.A. §2 (arbitration agreements not enforceable "upon such

grounds as exist at law or in equity for the revocation of any contract").

The district court's reliance on Nat'l Football League Mgmt. Council, 820

F.3d at 548, was misguided for an array of reasons.  First, Nat'l Football League

Mgmt. Council was an appeal from a district court's vacatur of an arbitral decision

based on evident partiality under 9 U.S.C. 10(a)(2).  As mentioned, the Nat'l

Football League Mgmt. Council plaintiff did not seek to invalidate the contract on

the basis of unconscionability.  The Nat'l Football League Mgmt. Council court

did not discuss or analyze the doctrine of unconscionability.  In fact, the word

"unconscionable" does not appear once in the entire 22-page decision.  Nat'l

Football League Mgmt. Council simply involved distinct issues.

Second, the Nat'l Football League Mgmt. Council court relied on Winfrey v.

Simmons Foods, Inc., 495 F.3d 549 (8th Cir. 2007)—which also did not involve

unconscionability—for the contention that "[t]he parties to an arbitration can ask

for no more impartiality than inheres in the method they have chosen."  The

arbitration agreement in Winfrey was the result of collective bargaining and it

provided, as many labor arbitrations do, that each party would select one

arbitrator—i.e., a "party-arbitrator"—and that the two party-arbitrators would then

jointly select a third neutral arbitrator.  That process would result in an overall

impartial and fair panel. 495 F.3d at 550-551. After losing at arbitration, the plaintiffs sought vacatur because defendants' party-arbitrator was biased. Id.[5]

The Eighth Circuit affirmed a denial of vacatur, holding that "[w]here an agreement entitles the **parties** to select interested arbitrators, 'evident partiality' cannot serve as a basis for vacating an award under §10(a)(2) absent a showing of prejudice." Id. (emphasis added). In other words, it was the specific nature of the arbitration agreement—one that permitted **both parties** to select a biased arbitrator—that formed that basis for Winfrey. Furthermore, read in context, the language relied upon by the Winfrey court is plainly inapplicable here:

> As we have observed in a previous case, the "parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Delta Mine Holding Co. v. AFC Coal Properties,* 280 F.3d 815, 821 (8th Cir. 2001) (internal quotations marks and citation omitted), *cert. denied,* 537 U.S. 817, 123 S. Ct. 87, 154 L.Ed.2d 23 (2002). "[W]here the parties have expressly agreed to select partial party **arbitrators**, the award should be confirmed unless the objecting party proves that the arbitrator's partiality prejudicially affected the award."

Id. at 551 (emphasis added).[6] As such, Winfrey stands for the unremarkable proposition that when **both** parties can select biased arbitrators, **who in turn select**

---

[5] Of note, in Winfrey, the defendants' complaint was in part that the plaintiffs' party-arbitrator had failed to make required disclosures. Id. at 552. Here, Mr. Goodell is not required to make *any* disclosures, contrary to the processes of every legitimate arbitration provider.

[6] The decision in Delta Mine also involved party arbitrators.

*a neutral third party*—those party arbitrators are permitted to be biased without rending the process unlawfully partial.

Here, contrary to <u>Winfrey</u>, only **one party**, **the NFL**, has a "party-arbitrator." Mr. Flores has no reciprocal "party arbitrator" and there is no neutral arbitrator balancing out the "agreed upon" partiality. The sole party arbitrator is financially and professionally bound and beholden to Defendants and is the chief executive of the NFL. Moreover, the sole party-arbitrator has already said the claims are "without merit," has no disclosure obligations, has no obligation to permit discovery, and is not subject to any other procedural safeguards. Furthermore, Mr. Goodell has hired and is currently represented by the same attorneys representing Defendants in this matter and in any potential arbitration. JA-227-28, 280-82.

<u>Third</u>, like <u>Winfrey</u>, the arbitration agreement in <u>Nat'l Football League Mgmt. Council</u> was the result of collective bargaining between the NFL and the NFL Players Association. 820 F.3d at 548. Thus, unlike here, the arbitration agreements in <u>Nat'l Football League Mgmt. Council</u> and <u>Winfrey</u> were both heavily negotiated rather than being forced upon an individual. To that end, immediately following the language relied upon by the district court, the <u>Nat'l Football League Mgmt. Council</u> Court stated:

> [T]the parties contracted in the CBA to specifically allow the Commissioner to sit as the arbitrator in all disputes brought pursuant to Article 46, Section 1(a). They did so knowing full well that the Commissioner had the sole

power of determining what constitutes "conduct detrimental," and thus knowing that the Commissioner would have a stake both in the underlying discipline and in every arbitration brought pursuant to Section 1(a). **Had the parties wished to restrict the Commissioner's authority, they could have fashioned a different agreement.**

820 F.3d at 548 (emphasis added).  But, as discussed below, the NFL Constitution at issue here was not the result of any bargaining with Mr. Flores and he could not have "fashioned a different agreement."  Rather, the incorporation of the NFL Constitution into the Flores-Patriots and Flores-Steelers Contracts was a "take it or leave it" proposition that he had no ability to negotiate or modify.  JA-506-22, 1201-19.

Fourth, Nat'l Football League Mgmt. Council is fundamentally inapplicable because it involved player discipline, whereas this matter involves federal statutory rights.  It is normal for an employer to make decisions concerning employee discipline.  Employers make countless disciplinary decisions across the country on a daily basis.  That is entirely different from an employer being an arbitrator as to whether the employer itself has violated anti-discrimination laws.  It is entirely "oppressive" and unfairly "favorable" to put that decision in the hands of an employer.

Adding to the district court's original error, in the Reconsideration Order, the district court found that it was irrelevant that Nat'l Football League Mgmt.

Council involved a collectively bargained arbitration agreement and involved statutory rights because "the Second Circuit relied on neither fact in reaching its conclusion." SA-43-44. Respectfully, those factors were implicitly considered in Nat'l Football League Mgmt. Council as they were inherent to the underlying facts and law relied upon in that decision.

In improperly relying on Nat'l Football League Mgmt. Council, the district court also respectfully misinterpreted the significance of and/or failed to give appropriate weight to numerous instructive and analogous decisions—far more analogous than Nat'l Football League Mgmt. Council—which stand for the proposition that a wholly biased arbitration process, even one ostensibly "agreed to," results in substantive unconscionability. In fact, far less egregious arbitration agreements have been considered unconscionable. See e.g. Hooters of America Inc. v. Phillips, 173 F. 3d 933 (4th Cir. 1999); McMullen v. Meijer, Inc., 355 F.3d 485 (6th Cir. 2004); Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370 (6th Cir. 2005); Pokorny v. Quixtar, Inc., 601 F. 3d 987 (9th Cir. 2010).

In Hooters of America Inc. v. Phillips, 173 F. 3d 933 (4th Cir. 1999) the Fourth Circuit invalidated an arbitration agreement where "[t]he employee and [employer] each select an arbitrator, and the two arbitrators in turn select a third" with the arbitrators all "selected from a list of arbitrators created exclusively by [employer]." The Phillips court took specific issue with this provision because:

> Under the rules, [employer] is free to devise lists of partial arbitrators who have existing relationships, financial or familial, with [employer] and its management. In fact, the rules do not even prohibit [employer] from placing *its* managers themselves on the list. Further, nothing in the rules restricts [employer] from punishing arbitrators who rule against the company by removing them from the list. Given the unrestricted control that one party ([employer]) has over the panel, the selection of an impartial decision maker would be a surprising result.

Id. at 939. The Phillips court invalidated this arbitration agreement because it failed to provide a "system whereby disputes are fairly resolved by an impartial third party." Id. at 940 ("the promulgation of so many biased rules—especially the scheme whereby one party to the proceeding controls the arbitral panel—breaches the contract entered into by the parties").

Similarly, in McMullen v. Meijer, Inc., 355 F.3d 485 (6th Cir. 2004), the Sixth Circuit invalidated an arbitration agreement whereby the employer would first select five candidate arbitrators subject to certain safeguards—each had to be "(1) an attorney, (2) unemployed by and unaffiliated with [employer], (3) generally recognized as a neutral and experienced labor and employment arbitrator, and (4) listed on the rosters of [prominent arbitration providers]." Id. at 488. Even though the employer unilaterally selected the candidate pool, there were at least standards in place to ensure impartiality. Nevertheless, McMullen held the arbitration

agreement did not provide "an effective substitute for a judicial forum" due to the "risk of bias inherent in [the arbitrator selection] procedure." Id. at 494.[7]

In Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 385 (6th Cir. 2005), the court refused to compel arbitration almost entirely on the basis that the arbitrator selection process lacked neutrality.[8] In Walker, the employer contracted with Employment Dispute Services, Inc. ("EDSI") to administer employee disputes. The arbitrator selection process, while unusual, at least created the possibility of a neutral panel: three arbitrators would be selected, one from each of three selection pools; the pools were (i) managers from other employers who contracted with EDSI, (ii) hourly employees from those other employers, and (iii) attorneys and former judges associated with neither party. Any arbitrator could be struck for cause by either party and the parties would strike names until one person remained in each pool. Id. at 375-76, 385-386. The Walker court found this lacked impartiality because EDSI is "clearly a for-profit business" and "[employer's]

---

[7]    Even a cursory review of the McMullen arbitration agreement demonstrates its superiority in fairness relative to Section 8.3. In addition to a far more reasonable arbitrator selection process, it also requires that proceedings "shall be conducted in accordance with the applicable provisions of the Employment Dispute Resolution Rules of the [AAA]" and guides the arbitrator to "authorize discovery consistent with . . . the need to provide full and fair consideration of the relevant and material facts of the case." JA-415-16.

[8]    In Floss v. Ryan's Family Steak Houses, Inc., 211 F. 3d 306, 314 (6th Cir. 2000), the Sixth Circuit also declined to compel arbitration based on the same arbitration agreement at issue in Walker. While the Floss court stated in *dicta* that the arbitrator selection process gave the court "serious reservations," the Walker court stated that "[t]he record in this case removes any uncertainties" previously noted in Floss.

annual fee accounted for over 42% of EDSI's gross income." As a result, the

"symbiotic relationship" between them meant the "[employer] effectively

determines the three pools of arbitrators." Id. at 386.

Furthermore, in Pokorny v. Quixtar, Inc., 601 F. 3d 987, 1002-3 (9th Cir.

2010), the court denied a motion to compel in arbitration where the employee

could select an arbitrator from either (i) a list of neutral JAMS arbitrators who had

attended a defendant-led orientation and who would be paid at a fixed rate, or (ii) a

list of neutral JAMS arbitrators who had not attended a defendant-led orientation

and who would be paid at the arbitrator's higher published rate. The Pokorny court

found the arbitration agreement to be unconscionable for a compilation of reasons,

including "the inclusion of an arbitration selection process that unfairly favors" the

employer and discretionary rules governed by the unfairly selected arbitrator that

failed to guarantee meaningful discovery. Id. at 1000.

The arbitration agreement in Section 8.3 is far more oppressive than those

cases. In fact, in each of Phillips or McMullen, Walker and Pokorny, there were at

least some procedural safeguards to help ensure that either the employee had some

involvement in the selection process and/or that the candidates had some indicia of

impartiality. In all four cases, the employee could still select the best out of a

group of potentially impartial arbitrators, rather than being stuck with an arbitrator

who is, without hyperbole, probably the single most biased person towards

Defendants in the entire world.  Here, there is not merely a "risk" of a biased arbitrator, a possibility of abuse of employer discretion, or an inference of impropriety—rather, the arbitrator already stated the case is "without merit."

The district court incorrectly distinguished Phillips and McMullen[9] on the basis that those arbitration agreements gave employers discretion over the pool of candidates, whereas there could be no improper use of discretion here because all parties agreed to Mr. Goodell.  SA-24-25.  But the district court's focus on that distinction only proves the error of the proposition that "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen." Regardless, it cannot be reasonably questioned that the oppressiveness of the arbitration agreement at bar pales in comparison to Phillips and McMullen because it *guarantees* a completely biased and partial arbitrator, while Phillips and McMullen merely increase that likelihood.[10]  Respectfully, the district court failed to appreciate that conclusion.

---

[9]    The district court's analysis of Pokorny and Walker was limited to one sentence each.  On Pokorny, the district court merely acknowledged that part of the decision rested on the fact that the arbitrator selection process used the threat of financial hardship to try to steer employees to select employer-friendly arbitrators.  On Walker, the district court merely mentioned that decision included dicta which reflected that "generally" pre-arbitration challenges to partiality are impermissible—though the Walker court did not follow that general rule.  SA-25-26.

[10]    The Phillips court even opined that it would be "surprising" if the selection process led to an impartial decision-maker—an acknowledgment that the appointment of a neutral arbiter was at least possible.  173 F. 3d at 939.

The flaw in the district court's conclusion is further demonstrated by several other courts which have also rejected the proposition that an employee is not necessarily entitled to a fair arbitration process, but only one that is as fair as was agreed to in the first instance.  See e.g. Nostalgic Partners, LLC v. New York Yankees Partnership, et al., No. 656724/2020 (BO) (N.Y. Cty. Sup. Ct. Dec. 17, 2021), Dkt. No. 108 at p. 2, Dkt. No. 110 at p. 26 ("Based on the appearance of impropriety, the Commissioner of Major League Baseball should not arbitrate a dispute of claims that are asserted against Major League Baseball" and "it is my view that the Commissioner of Major League Baseball cannot arbitrate a dispute in which Major League Baseball is a defendant."); State ex rel. Hewitt v. Kerr, 461 S.W.3d 798, 813-814 (Mo. 2015) (invalidating arbitration agreement as unconscionable due to bias where NFL commissioner was designated arbitrator over employment discrimination claim); see also Cross & Brown Co. v. Nelson, 4 A.D.2d 501, 503 (1st Dep't 1957) ("What we do hold is that no party to a contract, or someone so identified with the party as to be in fact, even though not in name, the party, can be designated as an arbitrator to decide disputes under it. Apart from outraging public policy, such an agreement is illusory; for while in form it provides for arbitration, in substance it yields the power to an adverse party to decide disputes under the contract . . . Unless we close our eyes to realities, the agreement here becomes, not a contract to arbitrate, but an engagement to capitulate");

Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 827 (Ca. 1981) ("a contract which purports to designate one of the parties as the arbitrator of all disputes arising thereunder is to this extent illusory [as] the party so designated will have an interest in the outcome which, in the view of the law, will render fair and reasoned decision, based on the evidence presented, a virtual impossibility . . . a contractual party may not act in the capacity of arbitrator— and a contractual provision which designates him to serve in that capacity is to be denied enforcement on grounds of unconscionability").

Respectfully, although Nostalgic and Hewitt are instructive, the district court did not conduct further analysis other than to say they were "interesting but not controlling" because none of the applicable contracts were governed by Missouri or New York law.[11]  SA-25 at n. 25.  That rationale was all the more misguided

---

[11]     At the time of the district court's decision, Nat'l Football League v. Gruden, 548 P.3d 775 (Nev. 2024), declining to find reversing the lower court's decision and declining to find Section 8.3 unenforceable, had not yet been issues.  We respectfully disagree with that court's majority.  Notably, Gruden was a split-decision with even the majority acknowledging that Section 8.3 was likely substantively unconscionable but declining to find procedural unconscionability given the plaintiff's sophistication.  Id.  However, the dissenting judge found procedural unconscionability given (i) the unequal bargaining power (notwithstanding the sophisticated plaintiff), (ii) the inability to negotiate the NFL Constitution, (iii) the NFL Constitution being a "take it or leave it" document, and (iv) the fact that the NFL Constitution was a 447-page document with a one-page arbitration agreement incorporated-by-reference to a seven-page employment contract.  The dissenting judge concluded that the arbitration agreement was unconscionable because "Goodell acting as arbitrator is outrageous."  We respectfully submit the dissenting opinion is more persuasive.

given that the primary case the district court relied on—Nat'l Football League Mgmt. Council—did not rest on any state law applicable to any contract.[12]

Finally, procedural unconscionability is present given that the NFL Constitution was never provided to Mr. Flores or attached to his employment contracts, no instructions were provided to Mr. Flores on where to access the document, he had no ability to negotiate the terms of the NFL Constitution, there is wildly unequal bargaining power between Mr. Flores and the NFL and he was in a uniquely take-it-or-leave-it posture given that the NFL is a virtual monopoly with usually only a few head coaching jobs available each year. JA-283, 1201-19. This is more than sufficient. See e.g. Porreca v. Rose, No. 13 Civ. 1674, 2013 WL

_____

[12]    Given the applicability of Florida law to the Flores-Dolphins Contract, the district court relied in part on Garcia v. Church of Scientology Flag Service Organization, Inc., No. 18-13452, 2021 WL 5074465, at *12 (11th Cir. Nov. 2, 2021). That contract is no longer at issue as this appeal. To the extent the Court finds Garcia instructive, the district court incorrectly interpreted that decision to mean an arbitration agreement is not unconscionable where the "lead arbitrator" made "various comments . . . reflecting bias in favor of the church." SA-25-26. In fact, Garcia held that (i) this did not rise to "evident partiality" under §10(a)(2) because "[j]udicial review of an arbitration award is 'among the narrowest known to the law'" and the agreed-upon arbitration procedure provided for party arbitrators who were expected to demonstrate bias, Garcia, 2021 WL 5074465, at *10-11, and (ii) the court was unable to intervene because "[t]he Supreme Court has made clear that the First Amendment forbids civil courts to decide legal disputes involving churches by 'resolving underlying controversies over religious doctrine.'" 2021 WL 5074465, at * 9. That aside, the arbitration agreement provided a far more impartial forum than here because, while it required the parties to select arbitrators that were in good standing with the church, it provided each party with an opportunity to select an arbitrator (whom, together, would appoint a neutral arbitrator). Id. at * 2. Moreover, there is no indication that the arbitrators (who were eventually selected by the district court from a list of 500 potential arbitrators) were being paid anything by the church. Finally, because the underlying claims involved interpretations of religious doctrine, it intuitively made sense that the arbitrators would be those familiar with and ostensibly faithfully live by such doctrine.

34

6498392, at *7-10 (E.D. Pa. Dec. 11, 2013) (finding procedural unconscionability despite arbitration agreement being provided to plaintiff to take home and review, because it was provided as a "take it or leave it" document and there was unequal bargaining power despite plaintiff being highly-educated); Nino v. Jewelry Exchange, Inc., 609 F. 3d 191, 201-202 (3d Cir. 2010) (finding procedural unconscionability where employee had no ability to negotiate arbitration agreement and there was unequal bargaining power despite employee being college-educated); see also Woebse v. Health Care and Retirement Corp. of America, 977 So. 2d 630, 633-635 (Fla. Dist. Ct. App. 2008) (finding procedural unconscionability where arbitration agreement was given to employee, but not explained and was included at the end of a 39-page document, together with unequal bargaining power); Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1533 (1st Dist. Ct. 2d Div. 1997) (finding procedural unconscionability in part based on unequal bargaining power between large corporation and ac-suite executive); Pokorny, 601 F.3d at 997 (finding procedural unconscionability where despite arbitration agreement being clear and conspicuous and the plaintiff having the ability to find similar work elsewhere, there was unequal bargaining power, arbitration agreement presented as "take it or leave it," and employer failed to provide full arbitration rules).

**B.** **The District Court Should Have Held that Arbitration Agreement Precludes Effective Vindication of Statutory Rights**

An arbitration agreement will be invalid if it thwarts Congressional intent and fails to provide a forum in which statutory rights can be effectively vindicated. See e.g. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) ("so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function"); American Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235, (2013) ("in Mitsubishi Motors, . . . we expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operate . . . as a prospective waiver of a party's right to pursue statutory remedies.'").

The anti-discrimination statutes are intended to correct societal problems of insidious discrimination and do so in part by encouraging individuals to pursue civil actions and act as "private attorney generals." See e.g. New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 63 (1980) ("Congress has cast the Title VII plaintiff in the role of 'a private attorney general,' vindicating a policy 'of the highest priority.'"). Thus, absent individual plaintiffs bringing discrimination claims, the anti-discrimination laws will cease to serve their intended purpose—

meaning the availability of a forum in which one can effectively pursue their claims is central to the efficacy of the law.

Respectfully, there is nothing novel about the proposition that an adjudication process that fails to provide for an impartial decisionmaker lacks legitimacy and undermines any ability to effectively vindicate one's rights. Courts have repeatedly held that to be the case. See e.g. Cole v. Burns Intern. Sec. Services, 105 F. 3d 1465, 1482 (D.C. Cir. 1997) ("statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections . . . .an employee cannot be required . . . to waive access to a neutral forum in which statutory discrimination claims may be heard"); Walker, 400 F.3d at 388 ("[a] structural bias in the make-up of the arbitration panel, which could stymie a party's attempt to marshal the evidence to prove or defend a claim, can be just as prejudicial as arbitral bias in the final decision on the merits. Such is the case here, providing an additional basis to conclude that [the] arbitration scheme does not allow for the effective vindication" of rights); Williams v. Cigna Fin. Advisors Inc., 197 F.3d 752, 763 (5th Cir. 1999) ("whether a federal statutory claim can be subjected to compulsory arbitration depends upon whether the particular arbitral forum involved provides an adequate substitute for a judicial forum in protecting the particular statutory right at issue"); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (approving arbitration for

discrimination cases in part on the fact that arbitration rules "provide protections against biased panels"); <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 102 (Cal. 2000) (arbitration agreements unenforceable absent neutral arbitrators and reasonable discovery). Absent an impartial decisionmaker, arbitration becomes nothing more than a "kangaroo court" and an absolute sham.

The district court erred by improperly narrowing the scope and application of the effective vindication doctrine. The district court found that the Supreme Court has limited the effective vindication doctrine to only applies under two very specific scenarios: (1) when an arbitral forum "forbids the assertion of certain statutory rights" or (2) where the arbitration agreement imposes costs "so high as to make access to the forum impactable." SA-24 (citing <u>Italian Colors Rest.</u>, 570 U.S. at 236). But that is not the law.

The effective vindication doctrine is not limited to any set of specific factors but is determined based on whether "the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." <u>Italian Colors Rest.</u>, 570 U.S. at 236; <u>see</u> <u>also</u> <u>Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors</u>, 59 F.4th 1090, 1098 (10th Cir. 2023) ("The key question is whether 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum'").

In fact, several courts have correctly applied the effective vindication doctrine in other contexts—with those particular contexts simply never having reached the Supreme Court. For instance, courts have invalidated arbitration agreements under the effective vindication doctrine where certain remedies were precluded in an arbitral forum or where statutes of limitations were shortened. <u>See e.g.</u> <u>Harrison</u>, 59 F.4th at 1098 (affirming invalidation of arbitration agreement on effective vindication grounds where statutory remedies under were precluded); <u>Cedeno v. Sasson</u>, 100 F. 4th 386, 395-396 (2d Cir. 2014) (waiver of remedies violated effective vindication doctrine; "Although the Supreme Court has never invalidated a provision in an arbitration agreement on this basis, it has repeatedly recognized the general principle that provisions within an arbitration agreement that prevent a party from effectively vindicating statutory rights are not enforceable."); <u>Reyes v. Gracefully, Inc.</u>, No. 17-CV-9328 (VEC), 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018) (shortening of statute of limitations would preclude the effective vindication of statutory rights); <u>Cruz v. AerSale, Inc.</u>, No. 22 Civ. 857 (GJF (KRS), 2024 WL 22092, at *10 (D.N.M. 2024) (effective vindication doctrine invalidates shortening of statute of limitations).

The bedrock of any adjudicatory system is that the decision-maker must be neutral. Absent that requirement, there ceases to be any legitimate means to effectively vindicate one's rights and the forum becomes a complete sham which

cannot carry out its statutory role.  If biased and partial arbitrators who are financially and professionally beholden to an employer are permitted to preside over statutory discrimination claims, the employees bound to those terms effectively cease to enjoy the protections of the anti-discrimination laws.  This "workaround" would utterly thwart and undermine Congressional intent.

## III. THE DISTRICT COURT CORRECTLY HELD THAT THE ARBITRATION PROVISION OF THE NFL CONSTITUTION INCORPORATED BY REFERENCE INTO THE FLORES-PATRIOTS CONTRACT IS UNENFORCEABLE

The district court correctly held that Section 8.3 of the NFL Constitution is illusory because it is subject to a no-notice unilateral modification provision, and that term cannot simply be "severed" from the remainder of the Flores-Patriots Contract.  SA-13-14, 41-42.  Both of these arguments were raised in original motion papers and then also rejected on reconsideration.[13]

### A. The District Court Correctly Held that the Arbitration Provision of the NFL Constitution is Illusory under Massachusetts Law

An arbitration agreement, like any other contract, may be deemed illusory if it permits unilateral modification by one party without notice.  As the district court correctly held, that is precisely the situation at bar.

---

[13] Defendants are incorrect that the issue of unilateral modification was raised in the March 1, 2023 Order "on the court's own initiative."  Defs.' Br. at 1.  Even if not a feature argument, Plaintiffs raised the issue in their original opposition papers.  JA-283 (listing unenforceable terms to include, "require[ing] Plaintiffs to comply with the Constitution as it may be amended, but neither the teams nor the NFL have any obligation to provide notice of changes.").  As such, any arguments Defendants raised on reconsideration are subject to an abuse of discretion review.

Massachusetts case law is abundant on this issue, starting with Jackson v. Action for Boston Comm. Development, Inc., 525 N.E. 2d 411 (Mass. 1988). Jackson addressed an employee's breach of contract claim in connection with his discharge when the employer failed to follow a grievance process in an employee handbook. The court found the handbook did not create contractual obligations in part because no "special attention" had been given to it, including that "the defendant retained the right to modify unilaterally the personnel manual's terms. . . [which] show[s] that any 'offer' made by the defendant in distributing the manual was illusory." Id. at 415-416. The Jackson court noted that other factors also undermined contract formation—e.g. the handbook was not negotiable, it expressly stated that it provided mere "guidance," and it was not signed. Id.

In 1996, Jackson was reaffirmed by O'Brien v. New England Telephone & Telegraph Co., 664 N.E.2d 843, 847 (Mass. 1996) ("[p]rinciples stated in the Jackson opinion remain sound."). O'Brien clarified that the Jackson factors "are not a rigid list of prerequisites [to contract formation], but rather [some factors] that would make a difference or might make a difference in deciding whether the terms of a personnel manual were at least impliedly part of an employment contract." Id. Reiterating Jackson, the O'Brien court noted that the presence of negotiations over a handbook could be a factor as could be the fact that "the employer retained the right unilaterally to modify the terms," among others. Id. at

41

847-848.  However, O'Brien did not address the issue further given that the employer did not retain explicit unilateral modification rights.  Id. at 849.

Together, Jackson and O'Brien mandate that an employer's right to unilaterally modify a contract is a critical factor—even if not dispositive—as to whether a handbook creates a contract.  Both decisions also confirm that other factors and circumstances may be considered.

In the matter at bar, the district court, in finding the illusory nature of the arbitration agreement, appropriately—and consistent with Massachusetts law—considered not only the NFL's right to unilaterally modify the terms, but its ability to do so at any time without notice.  SA-21-22.  In the Reconsideration Order, the district court identified additional factors which only further supported the same conclusion, including that the NFL Constitution was never distributed to Mr. Flores in the first instance, no amended versions were ever distributed, Mr. Flores did not sign the NFL Constitution, and Mr. Flores was unable to negotiate the NFL Constitution.  SA-36-41.

Numerous Massachusetts courts post-Jackson and O'Brien have concluded that a unilateral modification provision can render a contract illusory, particularly if it does not require notice and if the contract is not negotiated.  See e.g. Pearson v. John Hancock Mut. Life Ins. Co., 979 F.2d 254, 256-57 (1st Cir. 1992) (handbook not a contract where employer could unilaterally modify the terms "without

advance notice" and where there was "no evidence in the record suggesting that [employee and employer] negotiated concerning the contents of the manual"); Cadrin v. New England Tel. & Tel. Co., 828 F. Supp. 120, 122 (D. Mass. 1993) (handbook not a contract where it was subject to unilateral amendment, was not negotiated and no special attention paid to the document by employer other than annual distribution to employees); Douglas v. Johnson Real Estate Investors, LLC, 470 Fed. Appx. 823, 826 (11th Cir. 2012) (arbitration agreement unenforceable where employer could unilaterally modify the terms and employer had no obligation to obtain employee's signature or provide notice); Domenichetti v. The Salter School, LLC, No. 12 Civ. 11311 (FDS), 2013 WL 1748402, at *4-6 (D. Mass. April 19, 2013) (arbitration agreement unenforceable where employer could unilaterally modify the terms without notice); National Fed. Of the Blind v. The Container Store, Inc., No. 15 Civ. 12984 (NMG), 2016 WL 4027711, at *11-12(D. Mass. July 27, 2016) (arbitration agreement illusory where the terms were non-negotiable and one party could unilaterally modify terms without notice); Fawcett v. Citizens Bank, N.A., 297 F. Supp. 3d 213, 221 (D. Mass. 2018) (arbitration agreement illusory where employer retained right to unilaterally modify terms, could do so without any notice); McNamara v. S.I. Logistics, Inc., No. 17 Civ. 12523 (ADB), 2018 WL 6573125, at *4 (D. Mass. Dec. 13, 2018) (arbitration agreement illusory where employer could unilaterally modify, no notice required).

Defendants argue that this entire line of case law is inapplicable because Mr. Flores had a separate contract which provided for mutual consideration and incorporated the NFL Constitution's arbitration provisions by reference. See Defs.' Br. at 25-27, 28-32. As such, Defendants argue, even if the arbitration agreement was illusory standing alone, Mr. Flores' overall contract with the Patriots taken in totality was not.

While Defendants cite general cases for the proposition that not every term in a contract requires independent consideration and that incorporation-by-reference provisions are generally permitted, the case law does not provide or even suggest that a contracting party can enforce provisions which are subject to unilateral change at any time without notice. See Defs.' Br. at 25-26 (citing Garcia v. Steele, 211 N.E.3d 602, 611 (Mass. 2023); NSTAR Electric Co.v. Dept. of Public Util., 968 N.E.2d 895, 905 (Mass. 2012); Bulwer v. Mt. Auburn Hospital, 46 N.E.3d 24, 40 (Mass. 2013)).

Contractual provisions are almost uniformly deemed unenforceable when subject to unilateral modification without notice—and for good reason. To wit, if such a provision were enforceable, an employer could modify that provision in such a manner that it swallowed or altered the entire contract. Taken to its logical conclusion, Defendants' position would permit employers to bind employees to oppressive and unconscionable terms—terms the employee would not even need to

know about—through incorporating by reference a separate document permitting such amendments.

Massachusetts law forbids enforcement of such contracts under basic contract principles. See e.g. Graphic Art Finishers, Inc. v. Bos. Redevelopment Auth., 255 N.E.2d 793, 796 (Mass. 1970) ("a promise that binds one to do nothing at all is illusory and cannot be consideration"). Furthermore, contrary to Defendants' argument, finding such a provision unenforceable is not "singling out arbitration agreements for disfavored treatment," Defs.' Br. at 27, but it is upholding a logical and fair rule that applies to all provisions of all contracts.[14]

## B. The District Court Correctly Held that the Unilateral Modification Provision Was Not Severable

Defendants originally argued to the district court that to the extent any provision of any arbitration agreement was deemed unenforceable, the proper remedy was to sever the provision the district court found problematic. Dkt. No. 64 at p. 6. Defendants were more specific in their motion for reconsideration, and argued specifically that the unilateral modification provision of the NFL

---

[14] Defendants argue for the first time on appeal that the district court was incorrect because the Patriots did not have the ability to independently modify any term in the NFL Constitution without league vote. Defs.' Br. at 27-28. First, Defendants are wrong that the NFL Constitution can only be amended by league vote of NFL clubs. The NFL Commissioner can unilaterally modify the NFL Constitution at his discretion. JA-604. Second, Defendants do not cite any authority for the proposition that this procedure changes the analysis as to whether the arbitration agreement is illusory.

Constitution could be severed.  JA-1057-59.   Defendants changed course on their reconsideration reply papers and argued that the district court should delete a handful of words within a sentence of the Flores-Patriots Contract.  JA-1159.

As an initial matter, the district court correctly refused to sever the unilateral modification provision of the NFL Constitution as doing so would ignore that the contract was illusory.  As the district court opined:

> Defendants' argument that any illusory provision of the contract could simply be severed and the remainder of the contract would stand would require [the Court] to engage in an absurd process, essentially reviving a contract it found was never formed for its lack of consideration, omitting the [offending] clause that was fatal to the contract's proper formation, to therefore conclude a contract was formed.

SA-42 (internal quotes and citations omitted).

Defendants argue that to the extent the unilateral modification provision is problematic, it does not create an issue as to whether the contract is illusory but whether it is substantively unconscionable, which does not impact contract formation.  Defs.' Br. at 33 (citing Joule, Inc. v. Simmons, 2011 WL 7090714 (Mass. Sup. Ct. Dec. 5, 2011) and Gilbert v. Dell Technologies, Inc., 415 F. Supp. 3d 389 (S.D.N.Y. 2019)).  But nothing in Joule or Gilbert suggests anything other than that such a provision could also—in addition to creating an illusory contract— be a consideration under an unconscionability analysis.  Defendants have done nothing to explain otherwise.

However, even if the contract were not illusory, severance would still be impermissible and impossible. We start with the basic approach courts take with respect to severance of contractual provisions. First, a court must assess whether the parties intended for the contract to operate in that manner—typically, accomplished through a severability clause. See e.g. Dumitru v. Princess Cruise Lines, Ltd., 732 F. Supp. 2d 328, 346 (S.D.N.Y. 2010) ("A court may not rewrite clear and unambiguous contracts. However, the presence of a severability clause demonstrates that severance was a contingency contemplated") (citations omitted).

Second, courts determine whether severance of a particular provision will upset the "essence" or "core" of the contractual terms. See Machado v. System4 LLC, 465 Mass. 508, 518, n.15 (Mass. 2013) ("We note, however, that whether an arbitration agreement explicitly provides for the severance of unenforceable terms is not dispositive of the question whether those terms may in fact be severed."); Am. Fam. Life Assurance Co. of New York v. Baker, 848 F. App'x 11, 13 (2d Cir. 2021) (only permitting severance because the offending language was "a single, isolated provision" that did not "go to the core of the arbitration agreement"); see also Shotts v. OP Winter Haven, Inc., 86 So. 3d 456, 478 (Fla. 2011) (Florida law; refusing to sever portion of arbitration agreement because it "goes to the very essence of the agreement").

Here, the NFL Constitution, where the offending term exists, does not contain any severability clause.  JA-571-1019.   The Flores-Patriots Contract only contains a narrow severance clause; however, Defendants glaringly failed to even cite the language.  The severance clause only permits severance of "any provision or provisions" of the Flores-Patriots Contract found to be invalid or unenforceable.  JA-1207 (citing Flores-Patriots Contract at §20).

As there was no possible contractual basis to argue that any provision of the NFL Constitution should be severed,[15] Defendants argued for the first time in their reconsideration reply papers that the district court should have engaged in a line-item redline and cross-out a handful of words within a multi-sentence provision within the Flores-Patriots Contract which refers to the fact that the NFL Constitution may be "amended from time to time hereafter."  JA-1159. That phrase is not a "provision or provisions."  Thus, the severance clause, in its plain terms, does not permit the precision deletion of those words as Defendants propose.

Not only is the language Defendants are seeking to have severed not a "provision," but as the district court correctly concluded, the concept of abiding by

---

[15] Not only is there no contractual provision permitting severance of any provision in the NFL Constitution, but it would also be functionally impossible.  The NFL Constitution is not a mere agreement between two parties, but an omnibus document reflecting broad terms ratified by the NFL teams as to how the league should operate. The unilateral modification provision of §XXV applies to the entire document and describes in substantial detail how terms governing all aspects of the NFL are changed and/or modified. To sever §XXV would constitute completely rewriting an operative, substantive provision of the NFL Constitution not merely a removal of an arbitration term. JA-571-1019.

amended versions of the NFL's rules is interspersed throughout the contract and

severing a piece of §15 would be insufficient. Defendants' argument "ignores the

fact that sections 16 and 17. . . also require Mr. Flores to adhere to subsequent

amendments of the NFL rules." SA-42-43 at n. 12. Moreover, as the district court

continued:

> [T]he NFL Constitution generally grants the NFL
> Commissioner the unilateral power to set and amend all
> NFL rules and regulations, including the NFL [DRPG],
> and to promulgate other arbitration-related rules in the
> future that would bind Mr. Flores.

Id. (citing NFL Constitution §8.5). To that end, Defendants are wholly incorrect in

stating that the "potentially unenforceable provision . . . does not infect the

arbitration agreement as a whole." Defs.' Br. at 34-35 (citing Machado v. System4

LLC, 28 N.E.3d 401 (2015)). The district court correctly found that the NFL's

unilateral right to amend the NFL Constitution was fundamental to the entire

contractual scheme and could not be severed. SA-42-43 at n. 12.

Finally, it is of no moment that the district court did not consider

Defendants' belated request to seek enforcement of the version of the NFL

Constitution in effect at the time the Flores-Patriots Contract was signed.

Defendants are incorrect that they should have been permitted to do so because the

district court raised the issue of unilateral modification "on the court's own

initiative." Defs.' Br. at 1. Plaintiffs raised the issue in their original opposition

papers.  JA-283.

## IV.  THE DISTRICT COURT CORRECTLY HELD THAT DEFENDANTS COULD NOT COMPEL ARBITRATION UNDER THE FLORES-STEELERS CONTRACT

### A.  The District Court Correctly Held that the NFL Could Not Belatedly Rely on New Documents on Reconsideration

The district court did not abuse its discretion when it correctly denied Defendants' request, at the motion for reconsideration stage, to submit a new version of the Flores-Steelers Contract executed by Mr. Goodell.  SA-34-36.  For that reason alone, the district court's decision as to Mr. Flores' claims against the Giants and Texans should stand.

The moving party bears the burden of establishing the existence of a binding and valid arbitration agreement.  See e.g. Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) ("party seeking arbitration bears the burden of proving that a valid arbitration agreement exists"); Robertson v. Enbridge (U.S.) Inc., No. 2:19 Civ. 01080 (WSS), 2021 WL 3667903, at *5 (W.D. Pa. July 8, 2021) (employer has the "burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee.").

A motion for reconsideration based on new evidence must point to "evidence that was truly newly discovered or could not have been found by due diligence." Space Hunters, Inc. v. United States, 500 F. App'x 76, 81 (2d Cir. 2012) (citation omitted).  It is not a party's "opportunity to put forward evidence

that he could have, but failed, to provide the [c]ourt when the [c]ourt initially considered the motion." United States v. Posada, 206 F.Supp.3d 866, 868 (S.D.N.Y. 2016). Furthermore, for "newly discovered evidence" to be considered, it "must not have been available prior to entry of the judgment leading to reconsideration." Kopperl v. Bain, No. 3:09 Civ. 01754 (CSH), 2016 WL 310719, at *3 (D. Conn. Jan. 26, 2016) (citation omitted).

The Flores-Steelers Contract expressly states that the Commissioner's approval via signature was a condition precedent to the agreement becoming effective. JA-1215 at §12 ("This Agreement shall become valid and binding upon each party only when and if it shall be approved by the Commissioner of the NFL."). Upon submission of Defendants' motion on June 21, 2022, Defendants did not submit a fully executed version. JA-217-24, 1210-17. There was no justification for this omission given that it was executed by Mr. Flores in February 2022, and Mr. Goodell could have executed it at any point thereafter. Moreover, Mr. Goodell did, in fact, execute the document on June 17, 2022, JA-1270, before Defendants filed their motion. Defendants engaged in neglect when they failed to include a fully executed version of the Flores-Steelers Contract. Defendants engaged in further neglect when they failed to submit it as briefing stretched out over almost four months.

Following the full submission of Defendants' motion to compel arbitration, the district court considered the motion for approximately five months before issuing the March 1, 2023 Order. Defendants did not supplement the record at any point during that time frame. Importantly, on February 1, 2023, the district court ordered Defendants to submit complete versions of all the contracts previously filed, and on February 3, 2023, Defendants filed the documents as requested. JA-486-87, 515-22 1184-1262. Still, Defendants neither filed the completed version nor informed the district court that it desired to supplement the record.

Defendants claim they did not submit the NFL-approved contract even at that point because they understood the order to be requesting complete versions of the exact contracts previously filed. This does not explain Defendants' failure to take any affirmative step to present the completed version of the contract at any other point prior to the March 1, 2023 Order.

Thus, the district court correctly rejected Defendant's attempt to use "a motion for reconsideration as a means to mend holes in the record with neglected evidence." SA-34 (citing Horsehead Res. Dev. Co., Inc. v. B.U.S. Envt'l Serv. Inc., 928 F. Supp. 287, 289 (S.D.N.Y. 1997) ("a motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made.") (citations omitted)); see also Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC, No. 3:15 Civ. 911 (VLB), 2017 WL

945019, at *2 (D. Conn. Mar. 9, 2017) (rejecting attempt on reconsideration to provide the court with a letter demonstrating the lack of an arbitration agreement because it was in existence when the underlying motion was pending)).

Defendants argue that this was incorrect because they were not "provid[ed] notice and an opportunity to be heard." Defs.' Br. at 37. This ignores that Defendants were the moving party and retained the ability to provide evidence and be heard in the same manner any litigant can file motions and present evidence. Defendants were not faced with any burden or surprise; rather, they simply failed to submit evidence in anything resembling a reasonable or timely manner. For this reason, Defendants' cited cases—none of which involve a moving party being held responsible for failing to provide necessary documents—are completely inapposite. See Defs.' Br. at 37-38 (citing Catzin v. Thank You & Good Luck Corp., 899 F. 3d 77, 81-82 (2d Cir. 2018) (lack of opportunity to be heard when, absent any motion briefing, the court *sua sponte* declined to exercise supplemental jurisdiction and dismissed the action the day before a final pretrial conference); Snider v. Melindez, 199 F.3d 108, 110-113 (2d Cir. 1999) (lack of opportunity where court *sua sponte* dismissed pro se prisoner rights action without any briefing); Perez v. Ortiz, 849 F. 2d 793, 797 (2d Cir. 1988) (*sua sponte* dismissal); ING Bank N.V. v. M/V TEMARA, IMO No. 9333929, 892 F.3d 511, 523-25 (2d Cir. 2018) (*sua sponte* dismissal); Ethridge v. Bell, 49 F.4th 674, 688 (2d Cir. 2022) (*sua sponte*

dismissal)).[16]

### B. The District Court Correctly Held that the Commissioner's Approval Was a Condition Precedent to Contractual Obligations

The Flores-Steelers Contract expressly states that the Commissioner's approval was a condition precedent to the agreement becoming effective. JA-1215 at §12 ("This Agreement shall become valid and binding upon each party only when and if it shall be approved by the Commissioner of the NFL.").

Under Pennsylvania law, a "condition precedent" is "a condition that must occur before a duty to perform under a contract arises." Boro Const., Inc. v. Ridley Sch. Dist., 992 A.2d 208, 215 (Pa. Commw. Ct. 2010). "If a contract contains condition precedent, that condition must be met before a duty to perform under the contract arises." Id. As the district court found, "[t]he contract plainly states [] that it is valid and binding only when and if it shall be approved by the Commissioner of the NFL," and "[c]ourts do not assume a contract's language was chosen carelessly and must give effect to the clear and unequivocal language of a contract." SA-35 (citation omitted).

Defendants incorrectly argue that the district court should have held that, despite this clear language, the Flores-Steelers Contract was still valid and binding

---

[16] Defendants' alternative argument that they can re-file a motion to compel arbitration on remand (something Plaintiff does not concede) is a new argument raised on appeal. Plaintiff reserves all rights to oppose that motion on all potentially applicable grounds.

strictly through performance.  Defs.' Br. at 43-44.  Defendants' cited authority, however, only stands for the general proposition contractual agreements may be established through manifestations of intent other than through signed documents, i.e. through performance.

None of Defendants' cited cases stand for the proposition that an express condition precedent to a contract should be disregarded and ignored absent express waiver.  See Defs.' Br. at 43-44 (citing Tr. Under Deed of Wallace F. Ott, 2021 PA Super 203, 271 A.3d 409, 416 (2021) (a letter constituted a contract where an agreement to terms established through conduct); Universal Builders, Inc. v. Moon Motor Lodge, Inc., 430 Pa. 550, 561, 244 A.2d 10, 17 (Pa. 1968) (condition in a contract waived by virtue of a supplemental agreement); Poch v. Equitable Life Assur. Soc. of U.S., 22 A.2d 590, 594 (Pa. 1941) (insurance company waived defense that insured failed to provide timely proof of disability because "where an insurer refuses to pay a loss because of some alleged defense wholly apart from the furnishing of preliminary notice and proofs of loss, it has been repeatedly held that it thereby waives the necessity of furnishing such notice and proofs, except on the trial, upon the ground that such conduct of the insurer is tantamount to a statement that preliminary proofs of loss are not desired and upon the ground").

**C.     As Further Alternative Grounds, the Arbitration Agreement
Incorporated into the Flores-Steelers Contract Is Not Retroactive
to Past and/or Pending Claims**

Even if the Court were to consider the belatedly submitted Flores-Steelers

Contract, arbitration agreements are inapplicable as to past and/or pending claims

unless retroactivity is expressly agreed upon.  See e.g. Gair v. Great Star Tools

USA, Inc., No. 4:21 Civ. 00976, 2024 WL 711612, at *5 (M.D. Pa. Feb. 21, 2024)

(refusing to apply arbitration agreement to previously accrued claims); Russell v.

Citigroup, Inc., 748 F. 3d 677 (6th Cir. 2014) (refusing to retroactively apply

arbitration agreement absent clear agreement on retroactive application); Klay v.

All Defendants, 389 F.3d 1191, 1203 (11th Cir. 2004) (refusing to "compel

arbitration of claims arising from disputes which arose outside of the effective

dates of arbitration agreements," unless the agreement expressly includes claims

preceding the contract).  Nothing in Section 8.3 or the Flores-Steelers Contract

suggests that arbitration obligations are retroactive to past or pending claims.  JA-

603.

Furthermore, case law provides that an employer cannot immunize

themselves from a class action by having employees sign arbitration agreements

after a class action is pending.  See e.g. In re Currency Conversion Fee Antitrust

Litig., 361 F. Supp.2d 237, 254 (S.D.N.Y. 2005) ("this Court holds that those

arbitration clauses may not be enforced because Chase and Citibank added them,

without notice, after this litigation commenced"); <u>Weinstein v. Jenny Craig Op., Inc.</u>, No. 105520/11, 2014 WL 10680367, at *2 (N.Y. Cty. Sup. Ct. Sep. 08, 2014) ("Arbitration agreements signed after litigation is commenced are deemed unconscionable and thus unenforceable").

Finally, any arguable arbitration agreement is inapplicable and/or not retroactive for the additional reason that the Steelers expressly agreed that it would not be used retroactively against Mr. Flores. Prior to executing the Steelers contract, Mr. Flores needed assurances that the arbitration provisions contained therein would not apply to his pending claims. To that end, the Steelers agreed that "[t]his employment agreement is not intended to infringe in any way on the lawsuit filed by Coach Flores in February 2022, which is currently pending. The Club and Coach Flores do not intend for anything in this employment agreement to infringe upon Coach Flores' right to prosecute the pending lawsuit, and neither does this agreement infringe upon the rights of the NFL or any party to the lawsuit in asserting any defenses in the lawsuit." JA-1086-93, 1130-36.

To the extent the Flores-Steelers Contract, or anything incorporated into it, were to be the basis for Mr. Flores being unable to pursue his claims in his desired forum, that would "infringe [] on the lawsuit filed by Coach Flores in February 2022" in contravention of that agreement. As such, there is no reasonable way to

interpret the Flores-Steelers Contract in a way that would require him to arbitrate claims against the Giants or Texans.

<h3 align="center"><u>CONCLUSION</u></h3>

For the foregoing reasons, the aspects of the district court's decisions denying Defendants' motion to compel arbitration and denying Defendants' motion for reconsideration should be affirmed.

Dated: September 13, 2024
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By:   */s/ Douglas H. Wigdor*
     Douglas H. Wigdor
     David E. Gottlieb
     Michael J. Willemin

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
mwillemin@wigdorlaw.com
*Counsel for Plaintiff-Appellee*

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

By:   */s/ John Elefterakis*
     John Elefterakis
80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212 532-1176
*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,989 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in the Times New Roman font, size 14.

Dated:  September 13, 2024
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By:  _/s/ Douglas H. Wigdor_
    Douglas H. Wigdor
    David E. Gottlieb
    Michael J. Willemin

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
mwillemin@wigdorlaw.com
*Counsel for Plaintiff-Appellee*